THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY, APPELLANT, *v.* THE CITY OF BUFFALO AND ANOTHER, RESPONDENTS.

*Railroads — crossing a city street by a bridge — the authority to do so is derived from the statute, and not from the city — assent of the city — it does not decide the question whether the railroad has unnecessarily impaired the usefulness of the street crossed — Laws of 1850, chap. 140, sec. 28, sub. 5.*

In an action brought by a railroad company to restrain the city of Buffalo and its street commissioner from removing a solid abutment and pier, which stood in a street ninety-nine feet wide and supported a bridge carrying the railroad tracks, it appeared that the structure was erected in 1882 by the plaintiff's lessor under a permission, by the terms of which the city, by its common council, required a clear roadway of twenty-eight feet, and, further, that the crossing should be built subject to the approval of the city engineer.

This resolution was never rescinded, but two months later the city by resolution instructed the city engineer to notify the company that the span must be sixty-six feet, and a month later the common council passed a further resolution which, in effect, required the company to span the whole width of the street. No other resolution was passed, but a conference was had which resulted in a consent by the city engineer to the bridge as constructed.

This construction was such that, beginning on the easterly side of the street, there was first an opening of fifteen feet, next a pier seven feet wide, then a roadway of forty-four feet, and then a solid abutment of thirty-four feet.

The trial court, principally upon the ground that the city had no right to authorize an obstruction on a street, dismissed the complaint.

*Held*, that this was improper.

That authority to carry the railroad across the street was not derived from the city but from the general railroad act (chap. 140 of the Laws of 1850, § 28, sub. 5), although the assent of the corporation was by the act made necessary.

That where, as in the present case, that assent had been given, the right of the corporation became, as to the city, absolute and irrevocable.

That the language of the general railroad act implied that the public use of the highway crossed might be to some extent obstructed, the railroad company being required to restore the street "to its former state, or to such state as not unnecessarily to have impaired its usefulness."

That the question whether the bridge as constructed did unnecessarily impair the usefulness of the highway was not removed from the case by the consent of the city to its construction, and was a question properly to be determined by the court.

APPEAL by the plaintiff, the Delaware, Lackawanna and Western Railroad Company, from a judgment of the Supreme Court, entered, after a trial before the court at the Erie Special Term, in the office of the clerk of the county of Erie on the 31st day of December, 1891, dismissing its complaint and vacating a preliminary injunction, with costs.

This action was brought against the city of Buffalo and Henry Quinn, its street commissioner.

*J. G. Milburn*, for the appellant.

*W. F. Mackey*, for the respondents.

DWIGHT, P. J.:

The action was to restrain the defendants from removing an abutment and a pier of the bridge which carried the tracks of the plaintiff's railroad across Main street in the northern part of the city of Buffalo — otherwise spoken of in the case as North Buffalo and Buffalo Plains. The road was located and constructed in the years 1880–1882 by the New York, Lackawanna and Western Railway Company, a corporation duly organized under the general railroad act of this State, and in 1882 was leased by that company to the plaintiff, which has ever since been in possession of and operating

the same.  In October, 1881, the plaintiff's lessor obtained the assent of the city of Buffalo, by resolution of the common council thereof, duly adopted and approved, to the construction of its road on its located route across many streets of the city, which are named in the resolution, including Main street.  The resolution provided, among other things, that the crossing of Main street should be by bridge, leaving a clear roadway underneath of not less than twelve feet in height and twenty-eight feet wide in the clear; it also contained the provision that all crossings should be built subject to the approval of the city engineer.

Under the consent thus given the plaintiff's lessor was, in December, 1881, proceeding to construct its crossing over Main street when the city engineer objected that the minimum width of twenty-eight feet of roadway permitted by the resolution of the common council was not sufficient to accommodate the travel on the street, and he communicated his objection to the engineer of the railroad company and to the common council of the city.  Thereupon the common council, by resolution of December 12, 1881, instructed the city engineer " to notify the company that they must put a span at that point of not less than 66 feet wide," and on the 16th day of January, 1882, resolved " that this council will not receive, entertain or act upon any petition or request of said railroad company until the agents of said company pledge themselves to cross Main street at Buffalo Plains with a span of the full width of the street." These resolutions were communicated to the engineer and other officials of the railroad company, and thereafter in January, 1882, a conference was held between various officials of the city and of the railroad company, respectively, including the engineers of both. At that conference it was proposed on the part of the city, and either by, or with the assent of, the city engineer, that (in the language of the finding) " the company should modify its plans for such crossing so that the same should be constructed as it was afterwards actually constructed.  *  *  *  And that said railway company did thereupon proceed to construct such crossing in accordance with the plans so modified, with the approval of said city engineer." The court also made a separate finding as follows: " That the said crossing over Main street was so located and constructed with the approval of the city engineer of such city."

Main street, at the point of the crossing in question, is ninety-nine feet wide. The actual construction of the bridge, according to the modified plans adopted as above mentioned, embraced a pier seven feet thick, of which the west face is twenty-two feet inside of the easterly line of the street, and an abutment, backed by a solid embankment, the east face of which is thirty-four feet inside of the westerly line of the street. This left two openings for road-way and sidewalk, respectively, one of forty-four feet, and the other of fifteen feet in width.

It was upon findings which embraced the foregoing facts that the learned court at Special Term based its conclusions of law, which resulted in the dismissal of the plaintiff's complaint, to the effect (1) that the common council of Buffalo had no authority under its charter to grant permission to the plaintiff, or its lessor, to erect or maintain the abutment and pier, or any other permanent structures in Main street, upon which it might erect a bridge ; and (2) that such permission as was granted to plaintiff's lessor by resolution of October 10, 1881, was rescinded by the resolutions above mentioned of December 12, 1881, and January 16, 1882.

We do not think that either of these conclusions of law is well founded. It is the first of them to which the argument of the opinion below is chiefly addressed, and which is mainly relied upon by counsel for the respondent in support of the judgment. Both of these arguments seem to proceed upon the assumption that the power to authorize the crossing of the streets of a city by the tracks of a railroad rests with the municipality itself; that the right to make such a crossing is conferred by the city, and that the railroad company can acquire no greater right than the city can confer. But this is not the case. It is the legislature alone that has the power to confer such rights in the streets of cities, as in the other highways of the State, and over them, so far as public rights alone are concerned, the control of the legislature is supreme. (*The People* v. *Kerr*, 27 N. Y., 188 ; *Story* v. *N. Y. El. R. R. Co.*, 90 id., 122.) Accordingly the right to construct its road across any city street which the route of its road may intersect, is conferred by the general railroad act upon every railroad company duly organized under its provisions. The provision in question is as follows: " Every corporation formed under this act shall     *     *     *     have power to construct their

road across   *   *   *   any   *   *   *   street   *   *   *   which
the route of its road shall intersect;   *   *   *   but the company
shall restore the   *   *   *   street   *   *   *   thus intersected
*   *   *   to its former state, or to such state as not unnecessarily to
have impaired its usefulness.   *   *   *   Nothing in this act con-
tained shall be construed to authorize   *   *   *   the construc-
tion of any railroad not already located   *   *   *   across any street
in any city without the assent of the corporation of such city."
(Laws of 1850, chap. 140, § 28, sub. 5.)   There was also in the
special act of 1870 (chap. 519, tit. 3, § 19), for the revision of the
charter of Buffalo, provision for the mode in which the above-
mentioned assent of the corporation should be given, as follows:
"The common council, by a vote of two-thirds of all of its members
elected, may permit the track of a railroad to be laid in, along or
across any street or public ground."

Thus it appears that the plaintiff's lessor did not derive its right
to cross Main street with its tracks, from the city of Buffalo, but from
the State of New York; and that it took this right subject only to
the condition of obtaining the assent of the city of Buffalo by the
vote of two-thirds of its common council, and to the duty of restoring
the street to a state of usefulness not unnecessarily impaired.

In the cases where the rule has been so strongly enforced, that a
municipality has no authority to create or permit a permanent
obstruction to the use of its streets or highways, there will be found
to have been an absence of legislation conferring such authority.
Such are the numerous cases of which *Callanan* v. *Gilman* (107
N. Y., 365), and *Cohen* v. *The Mayor* (113 id., 532), are late and
prominent examples, in which it has been held that a municipality
has no authority to create or permit a nuisance, and that any perma-
nent or habitual obstruction of a public street is a public nuisance.
But no one will contend that any obstruction to a highway author-
ized by the legislature is a nuisance, nor that the legislature may not
authorize such obstruction where no private interest is invaded, even
to the extent of compelling the discontinuance of the use of the
highway as such.   (*People* v. *Kerr, supra.*)

These considerations are important as bearing upon both of the
conclusions of law upon which, as we have seen, the judgment of
the Special Term was based.   Because, first, the right being con-

ferred by act of the legislature is subject to no limitations except those prescribed by that act; and, second, being conferred, so far as the city is concerned, only on condition of the consent of the common council, it became absolute when that consent was given, and was not subject to revocation by any authority short of that by which it was conferred. The legislature confers the right subject to the assent of the city; that assent being obtained the right becomes an absolute one, conferred by the legislature, and not by the city, and it cannot be revoked by any act of the latter.

But, further, the language of the provision of the general railroad act which prescribes the manner in which the right shall be exercised, necessarily implies that the public use of the highway crossed may be to some extent obstructed, and its usefulness to some extent impaired. The requirement is that the street shall be restored to its former state, " *or* to such state as not *unnecessarily* to have impaired its usefulness." It is not, therefore, every obstruction to the easement of the local public in the street by the construction of a railroad across it, which becomes *ipso facto* a public nuisance; but only such an obstruction as is unnecessary to the exercise of the more important easement of the general public in the railroad to be constructed. (*People* v. *The N. Y. C. and H. R. R. R. Co.*, 74 N. Y., 302; *People* v. *N. Y., N. H. and H. R. R. Co.*, 89 id., 266; *Post* v. *W. S. R. R. Co.*, 123 id., 580.)

As we have seen from the findings of the court at Special Term, the consent of the city was originally given to the construction of the crossing in question by a bridge, leaving a clear road-way beneath it of not less than twenty-eight feet in width, by a resolution of the common council, which further prescribed that the crossing should be built subject to the approval of the city engineer. This officer having objected that the proposed width of road-way of twenty-eight feet was insufficient, the common council adopted two other resolutions which, while not purporting to revoke the consent already given, successively proposed two other plans for the construction of the bridge. But it was subsequent to the adoption of both of these resolutions that the plan actually and finally employed was agreed upon between the officers of the railroad company, and " the city engineer and the street committee of the common council of Buffalo," upon which plan the construction of the bridge was actually pro-

ceeded with and completed as it stands to-day; and the court expressly finds that this construction of the bridge was with the approval of the city engineer.

We think the only question of fact which was open for litigation in this case was whether the bridge, as constructed, did unnecessarily impair the usefulness of the highway over which it passed. That question was not foreclosed by the consent of the common council. The two requirements of the statute are independent of each other There must be not only the consent of the city to a crossing, but a construction of the crossing in such manner as not unnecessarily to impair the usefulness of the highway.

This question was not tried, and there was no finding on the subject.

We think there was error in the conclusions of law at Special Term for which the judgment of that court should be reversed and a new trial granted.

MACOMBER and LEWIS, JJ., concurred.

Judgment appealed from reversed and a new trial granted, with costs of the appeal to abide the final award of costs.