DELAWARE, L. & W. R. CO. v. CITY OF BUFFALO et al.

(Supreme Court, Appellate Division, Fourth Department. April 18, 1896.)

RAILROAD BRIDGES—CROSSING STREETS—NUISANCES—REMOVAL.

The general railroad act (Laws 1850, c. 140, § 28, subd. 5) empowers a. railroad to cross any street, but requires the assent of the city, and that the company shall restore the street "to such a state as not unnecessarily to have impaired its usefulness." *Held*, that where a railroad, having the assent of a city, constructed a bridge across the street, according to plans agreed on by the railroad and city, which greatly and unnecessarily obstructed the street, it constituted a nuisance, which the city, years afterwards, on notice to the railroad, might remove, under its charter (Laws 1870, c. 519, tit. 9, § 5), providing that the city shall remove obstructions on the streets, and abate all nuisances. Follett and Ward, JJ., dissenting.

Appeal from special term, Erie county.

Action by the Delaware, Lackawanna & Western Railroad Company against the city of Buffalo and another for injunction. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

In 1881 the New York, Lackawanna & Western Railroad Company, a railway corporation, and the plaintiff's lessor, filed a map and profile of its proposed route through the city of Buffalo, in the Erie county clerk's office, which map showed, among other things, that such route was designed to cross Main street, one of the thoroughfares of that city. Thereafter, and on the 10th of October, 1881, the city, by resolution of its common council, duly granted permission to the railroad company to construct its road along the proposed route, and directed the crossing of Main street "to be by bridge, leaving a clear roadway underneath, at least twelve (12) feet in height and twenty-eight (28) feet in the clear, and subject to the approval of the city engineer." The railroad company, availing itself of the permission thus granted, proceeded at once to construct its crossing, but without first consulting with, or receiving the approval of, the city engineer, and, in so doing, located both abutments of the bridge in the street, whereupon it was notified by the city engineer that its plan of crossing did not meet his approval. Upon the 14th of December, 1881, the common council, by a resolution duly adopted, directed the company to construct a span of at least 66 feet in width, in carrying its bridge over the street. Thereafter, and in the month of January, 1882, a conference was held between the officers of the railroad company, the city engineer, and the defendant's street committee, which resulted in a modification of the terms and conditions theretofore sought to be imposed by the common council, and in consequence of which the company proceeded with and completed the construction of its bridge over and across Main street in such manner that a clear roadway was left underneath the structure, 12 feet in height and 42½ feet in the clear; locating its abutments, one on the easterly line of Main street, with a pier about 20 feet westerly therefrom, in the street, and the other about 34 feet easterly of the westerly line of the street, and entirely within the limits of the street. Main street, at this point, is 99 feet in width, upwards of 40 feet thereof being occupied by the company's structure; and upon the westerly side thereof the sidewalk is completely covered by an embankment, so that it is necessary for all foot passengers upon that side of the street to walk in the highway a distance of 82 feet, in order to pass this obstruction, and the space remaining is insufficient to meet the requirements of the public who have occasion to use the highway. It appears that this street is constantly used by large numbers of people on foot, and by divers kinds of vehicles, and also by surface street cars, and that about 100 feet south of the bridge the street is crossed by the tracks of the New York, Lake Erie & Western Railroad Company at grade, the view of which crossing is very materially obstructed, to travelers approaching from the north, by the pier, abutments, and embankments of the bridge in question. It was entirely feasible to carry the railroad tracks over the street by means of a bridge with a single span, and in such

manner as not to obstruct or interfere in any appreciable degree with the street itself. The common council did not formally approve of the action of the city engineer and street committee in assenting to a modification of the require- ments embodied in the resolution of December 14th; and upon May 26, 1890, that body adopted a further resolution directing its street commissioner (the defendant Quinn) to notify the plaintiff to remove the obstructions above speci- fied within 90 days, and, if they were not removed within that time, to remove them at the plaintiff's expense. This resolution was approved by the mayor, whereupon this action was brought to restrain the defendants from carrying the same into effect.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

John G. Milburn, for appellant.

Charles L. Feldman, for respondents.

ADAMS, J. This case comes into this court with the advantage of a previous adjudication which commands our approval, and which must be regarded as conclusive, so far as one of the essential features of the case is concerned. Upon the former trial the com- plaint was dismissed upon the theory (1) that the common council of the city of Buffalo had no authority, under its charter, to grant permission to the plaintiff, or its lessor, to erect or maintain the abutment and pier, or any other permanent structure, in Main street, upon which it might construct a bridge; and (2) that such permis- sion as was granted to the plaintiff's lessor by the resolution of October 10, 1881, was rescinded by the resolutions of December 14, 1881, and January 16, 1882. This decision was reversed by the gen- eral term, in the Fifth department, for the reason that it apparently rested upon the assumption that the right of the railroad company to cross the streets of the city was one that was conferred by the municipality itself, whereas in fact it was one derived from the legislature, which exercises supreme power over the streets of cit- ies, as well as over the highways of the state at large, although, where it is designed to cross the streets of a city, the assent of the municipality must first be obtained, as a prerequisite to the exer- cise of that right. And in this connection it was further held that where, as in the present case, such assent had been given, the right of the corporation became, as to the city, absolute and irrevocable. 65 Hun, 464, 20 N. Y. Supp. 448. We start out, therefore, in the consideration of this case, with the following propositions clearly established: (1) That the plaintiff, or its lessor, obtained its right to carry its tracks across the street in question from the power con- ferred by the general railroad act; (2) that this right, thus ob- tained, was nevertheless subject to the approval of the municipal- ity; (3) that such approval was given, and has never been revoked, because it was irrevocable. With the law of the case thus defined, there still remained for determination by the trial court the ques- tion of whether or not the railroad company had complied with the provisions of the act from which it derived its authority to construct its road, which requires that, in carrying its tracks across a public highway, it shall restore the same "to such a state as not unneces- sarily to have impaired its usefulness" (Laws 1850, c. 140, § 28, subd.

5); and this issue, it now appears, was decided in the negative by the court upon the second trial, which, with abundant evidence to sustain the conclusion, found that the pier, the westerly abutment, and the earthen embankment, which constitute the foundation of the bridge, and which, confessedly, are within the boundary lines of Main street, materially delay and inconvenience the public, and are an obstruction to travel in the street; that they interfere with the view of trains on the tracks of the New York, Lake Erie & Western Railway, just south of the structure; that the usefulness of Main street as a public thoroughfare is impaired thereby; that such impairment and obstruction were not necessary in the construction of the overhead crossing; and that it is entirely feasible to carry the plaintiff's tracks over the highway by means of a single span.  It is hardly necessary to add that this condition of affairs constitutes an obstruction to a public street in a populous city, which must, of necessity, prove very serious in its proportions, and a constant annoyance to a considerable number of people.  It is therefore one which seems to demand some action upon the part of the local authorities, and it only remains to determine whether the remedy resorted to in this case was an efficient and proper means of accomplishing the object sought.

The primary use of a highway, whether in the country or city, is to permit the passing and repassing of the public thereon, and the public are entitled to an unobstructed and uninterrupted use thereof for its entire width.  Cohen v. Mayor, etc., of New York, 113 N. Y. 532, 21 N. E. 700.  But such use is subject, of course, to legislative abridgment and restriction; and therefore it is that railroad companies are permitted to lay their tracks over and upon the highways of the state, with the condition imposed, nevertheless, that in availing themselves of this privilege they shall cause no unnecessary impairment of such highways, and shall not unnecessarily interfere with the use for which they are primarily designed.  Laws 1850, c. 140, § 28; Laws 1890, c. 565, § 11.  It follows, therefore, that, when the plaintiff's lessor obtained the assent of the defendant's common council to carry its tracks across Main street by means of an overhead bridge, it had acquired all that was necessary to the exercise of its right to make such a crossing in the manner provided by the legislature.  But, as we have seen, the statute conferred upon it no power to cause an unnecessary obstruction to the public use of the street, nor could such power be derived from any resolution of the common council, however comprehensive might have been its terms; and no lapse of time, however great, could destroy the right of the city officials to remove or abate an obstruction thus created, because it obviously constituted a public nuisance. St. Vincent Female Orphan Asylum v. City of Troy, 76 N. Y. 108; People v. Maher, 141 N. Y. 330, 36 N. E. 396; Cohen v. Mayor, etc., of New York, supra; Town of Windsor v. Delaware & H. Canal Co., 92 Hun, 127, 36 N. Y. Supp. 863; Wakeman v. Wilbur, 147 N. Y. 657, 42 N. E. 341.

Having reached this conclusion with respect to the situation, it is manifest that the municipality might avail itself of any remedy

which the law affords, to accomplish the removal of the illegal obstruction. There were several at its command, which will readily suggest themselves, one of which, and the one actually employed, is furnished by section 395 of the city charter, which directs that:

"The city shall remove all encroachments, projections over and obstructions upon the public grounds, alleys, streets and thoroughfares, and abate all nuisances; and cause the expense to be assessed upon the lands upon or in front of which such encroachment, projection, obstruction or nuisance was, or upon the parcels of land benefitted by such removal."

The present charter was enacted subsequent to the adoption of the resolution of the common council which initiated the proceeding complained of, but this section was simply a substitute for a similar one contained in the former charter, whch was in effect at that time. Laws 1870, c. 519, tit. 9, § 5. The employment of this summary method of abating a public nuisance was attended with considerable hazard, it is true; for the mere declaration by some local authority that a nuisance exists is not conclusive upon the party concerned, who may, as the plaintiff is now doing, contest that fact in the courts. Cooley, Const Lim. (5th Ed.) p. 742. And it is a method which should be resorted to with great caution and hesitation. Woods, Nuis. § 740. But, nevertheless, where it is apparent that an obstruction to a highway actually exists, and that it is of such a character as to constitute a public nuisance, the power to thus abate it may be constitutionally conferred upon a municipal corporation, and when thus conferred, may be legally resorted to. People v. Board of Health of City of Yonkers, 140 N. Y. 1, 35 N. E. 320. We conclude, therefore, that, inasmuch as the facts in this case show the existence of such an obstruction, it cannot be said that the means adopted by the defendant for its removal were unjustifiable, especially in view of the reasonable time which was afforded the plaintiff to avoid any interference upon the part of the defendants, by itself taking the necessary steps to remove the obstruction complained of, and consequently we are of the opinion that the judgment appealed from should be affirmed.

Judgment affirmed, with costs. All concur, except FOLLETT and WARD, JJ., dissenting.

FOLLETT, J. (dissenting). I am unable to concur in holding that a bridge which has existed for eight years over a street, constructed pursuant to a mutual agreement between the railroad and the city, is a "public nuisance," or an "encroachment," which may be summarily torn down. The city should have sought redress for its alleged wrongs by an action in which the duties and liabilities of each party could have been determined and declared. If this bridge is summarily torn down, what kind of one may be built in its place, how high, with what span, at whose expense, or is the railroad to be cut in two at this point? The defendants might have set up in their answer in this action any change in the situation which rendered a different structure necessary, prayed for affirmative relief, and had the duties and liabilities of the parties adjudicated; but they chose to rest their case on an alleged legal

right to tear down the bridge as a nuisance, which, it seems to me, they failed to establish. I think the judgment should be reversed, and a new trial granted, with costs to abide the event.

WARD, J., concurs.