ligence, if the contract of shipment contains apt words expressing such intent. In the case at bar the contract expressly relieves the defendant from liability for the damages which this action is brought to recover. It was a contract in ordinary use, and one which the defendant invariably required the shipper to sign before undertaking the transportation of his goods. The plaintiff was an experienced shipper of horses, as was his agent. Both had previously shipped by the defendant, and had received upon such occasions contracts in all material respects like the one in question. In this connection it may be proper to observe that, although the contract in question purports to relieve the carrier from gross negligence, that provision is unimportant in this case, for the reason that the negligence of the defendant, if it be conceded that it was negligent at all, cannot be characterized as either willful or gross. The case consequently does not come within the principle asserted by this court in Grand v. Livingston, 4 App. Div. 589, 38 N. Y. Supp. 490, affirmed in 158 N. Y. 688, 53 N. E. 1125. The conclusion is reached that the plaintiff's exceptions should be overruled, and judgment ordered for the defendant, with costs.

Plaintiff's exceptions overruled, motion for new trial denied, and judgment ordered for the defendant, with costs. All concur.

---

CITY OF ROCHESTER v. BELL TEL. CO. OF BUFFALO.

(Supreme Court, Appellate Division, Fourth Department. May 22, 1900.)

1. TELEGRAPHS AND TELEPHONES—STREETS—RIGHT TO USE—CITY'S REGULATION —POLICE POWER.

Laws 1848, c. 265, authorizes a corporation organized thereunder to construct telegraph lines along and upon any of the public roads or highways of the city; Laws 1853, c. 471, authorizes such companies to erect and construct necessary fixtures for their lines "over or under any of the public roads, streets or highways"; and Laws 1890, c. 566, amending such previous acts, provides that a telegraph or telephone company may construct and maintain fixtures for its lines under or over any of such streets, etc. *Held* that, while a city has no power to prevent a telephone company incorporated under such acts from using its streets for the erection and maintenance of a telephone line thereon, it has authority under its general police power to regulate the manner in which such lines should be constructed and maintained.

2. SAME—INJUNCTION—MOTION TO DISSOLVE—DENIAL.

Defendant was authorized to erect and maintain a telephone line on the streets of a city, and, by agreement with it, contracted to lay its wires, cables, etc., underground in its streets in the places and in the manner designated by the city council, and under its supervision. Thereafter the city, under Laws 1894, c. 28, authorizing the common council to regulate the construction of subways laid in the streets, contracted with another electric company to construct a conduit in a certain street, to be of sufficient dimensions to accommodate the wires of the telephone company and all other corporations having a right to carry electric conductors under the streets, and that it should rent the use of such ducts to such other companies on proper terms. Such conduit was constructed, after which defendant refused to lay its wires therein, and began excavating the street for the purpose of constructing a conduit solely for its own use, when the city obtained an injunction restraining such ex-

cavation; and, on motion to dissolve, defendant produced affidavits alleging that the powerful currents of electricity carried by other wires already laid in the conduit constructed would destroy the use of its wires for its purposes, and admitted that, if the injunction was dissolved, it would immediately enter upon and excavate the street, and construct a conduit therein. *Held*, that since a dissolution of the injunction would deprive the city of any adequate remedy, without a hearing on the controverted issues of fact, which should not be determined on a motion or on affidavits, the denial of defendant's motion to dissolve was proper.

Appeal from special term, Monroe county.

Suit by the city of Rochester to enjoin the Bell Telephone Company of Buffalo from constructing a conduit in one of its streets in which to lay telephone wires. From an order denying defendant's motion to vacate the injunction on its answer and affidavits, it appeals. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

John A. Barhite, for appellant.
P. M. French, Corp. Counsel, for respondent.

McLENNAN, J. The action was begun on the 24th day of November, 1899, to obtain a judgment perpetually enjoining the defendant from constructing a conduit or subway in Oxford street, in the city of Rochester, N. Y., in which to place its telephone wires, and from in any manner interfering with said street for that purpose. The complaint alleges, in substance: That the defendant is a domestic telephone corporation, engaged in the telephone business in the city of Rochester since the year 1880 under and in pursuance of the general laws of the state, and of a franchise or permission granted to it by said plaintiff. That on the 10th day of May, 1888, defendant and plaintiff entered into an agreement which provided, among other things, that the defendant, within a certain time, should place and maintain its wires, cables, and conduits underground in the streets of the city, in the places and in the manner designated by the executive board or common council of said city, and under its supervision, and that no conduit should be laid in any street unless determined upon by said executive board, and under its supervision and to its satisfaction. Said agreement also provided that its terms might be altered, amended, modified, or revoked by the common council of said city at any time. That by chapter 28 of the Laws of 1894 the common council was empowered to regulate and control the construction of all subways and conduits laid in the public streets. Thereafter, and on the 5th day of September, 1892, the plaintiff entered into an agreement with the Rochester Gas & Electric Company, a domestic corporation, by which it granted to it the right to construct and maintain subways and conduits in the streets of said city upon condition that it would lay sufficient ducts to accommodate the plaintiff and any and all other domestic corporations having the right to carry electric conductors under said streets, and that it would rent the use of the same to such other companies upon proper terms. That the said Rochester Gas & Electric Company laid and constructed a subway in Oxford street under said agreement,

adequate to conveniently accommodate the wires of the defendant therein, and the defendant has the right to rent space in said subway for its purposes. · Thereafter, and on the 12th day of September, 1899, the common council of the plaintiff adopted a resolution requiring all persons and corporations having wires on Oxford street, to place the same in the conduits constructed by the Rochester Gas & Electric Company. The defendant refused to comply with the terms of such resolution, and entered upon and commenced excavating Oxford street for the purpose of constructing a subway therein solely for its own use. The foregoing allegations of the complaint were supported by the affidavit of the then corporation counsel. Upon the summons, complaint, and such affidavit, an injunction order was granted ex parte by the county judge of Monroe county, restraining the defendant from excavating in Oxford street or laying a conduit therein, and from in any manner interfering with said street for that purpose, until the further order of the court. Thereafter a motion was made by the defendant, at a special term of the supreme court, to vacate the injunction upon said complaint and affidavit, and upon° a large number of other affidavits read in support of said motion, which affidavits stated and · alleged, among other things, that it would be impracticable for the defendant to comply with the requirements of the resolution adopted by the common council, for the reason, among others, that the conduit which said resolution required it to occupy with its wires contained wires charged with a very powerful current of electricity, which would practically destroy the use of plaintiff's wires for its purposes. The motion to vacate the injunction coming on to be heard, the plaintiff presented a large number of affidavits which controverted the principal facts stated in the moving affidavits, and alleged, among other things, that it was entirely feasible for the defendant to occupy with its wires the conduit or subway of the Rochester Gas & Electric Company in Oxford street, and that to construct and maintain another and independent conduit in said street would unnecessarily injure the property of abutting owners, and would seriously inconvenience the public. There was also a conflict in the affidavits as to several other material facts relating to or bearing upon the rights of the respective parties. Upon all the facts the learned trial court at special term made an order denying the defendant's motion, and from such order this appeal is taken.

It does not appear, and is nowhere alleged, that a speedy trial of the case may not be had, by which the disputed facts may be passed upon and determined in the ordinary way. Whether or not the temporary injunction should be vacated was to some extent, at least, addressed to the sound discretion of the court at special term; and, unless it is clear that such discretion was improperly exercised, it ought not to be interfered with by this court.

The defendant was incorporated pursuant to chapter 265 of the Laws of 1848, and the laws amendatory thereof and supplementary thereto. That act authorized a company so incorporated to construct lines of telegraph along and upon any of the public roads and highways within the state. By an amendment enacted by chapter 471 of the Laws of 1853, such a company was authorized to erect and con-

struct the necessary fixtures for its telegraph lines over or under any of the public roads, streets, and highways. The law was again amended by chapter 566 of the Laws of 1890. Section 102 of that act provides that a telegraph or telephone company may erect, construct, and maintain the necessary fixtures for its lines upon, over, or under any of the public roads, streets, and highways. Under such legislative enactments the defendant had the right, independent of any permission granted by the plaintiff, to occupy Oxford street with the wires and appliances reasonably necessary for the proper conduct of its business. Barhite v. Telephone Co. (Sup.) 63 N. Y. Supp. 659. It was held in the case of People v. Metropolitan Tel. Co., 31 Hun, 596, that, as authority was given to the defendant by the legislature to construct and maintain such appliances as were necessary in the streets of the municipality for the proper conduct of its business, such occupation could not be held to be a nuisance or an unlawful obstruction of the streets. Any obstruction of the highways which is authorized by the legislature cannot be held to be a nuisance, and the legislature may authorize an obstruction, where no private interest is involved, even to the extent of compelling the discontinuance of the use of a highway. Delaware, L. & W. R. Co. v. City of Buffalo, 65 Hun, 464, 20 N. Y. Supp. 448. While it is settled by authority that a telephone company, incorporated as was the defendant, has the right to use the public streets and highways of a city for its reasonable purposes, it is equally well settled that such use is subject to reasonable control, supervision, and regulation by the authorities of the municipality in which such streets and highways are located, by virtue of, and as a part of, the general police power. People v. Squire, 107 N. Y. 593, 14 N. E. 820. In that case the court says:

"The primary and fundamental object of all public highways is to furnish a passageway for travelers in vehicles or on foot through the country. Bouv. Inst. par. 442. They were originally designed for the use of travelers alone, but in the course of time, and in the interest of the general prosperity and comfort of the public, they have been put, especially in large cities, to numerous other uses, but such uses have always been held to be subordinate to the original design and use. * * * The due and orderly arrangement of the various and conflicting claims to privileges in the streets of large cities would seem to require the creation of a neutral board, with controlling authority to form a comprehensive plan by which their various enterprises may be harmonized and carried on without detriment to each other, and with due regard to the rights of the public. Such power is pre-eminently a police power, and it is within the legitimate authority of a legislature to delegate its exercise to municipal corporations."

It was further held in that case that such police power and authority cannot be nullified or overridden by any chartered rights or franchises granted by municipalities.

In Telegraph Co. v. Hess, 125 N. Y. 641, 26 N. E. 919, the plaintiff had erected its poles and strung its wires in certain streets in the city of New York. Pursuant to the provisions of the subway laws, so called, the plaintiff was given notice requiring it to remove its poles and place its wires in subways which had been constructed for that purpose. The plaintiff refused to comply with the request, upon the ground that it had acquired vested rights under its contract with the municipality, which did not impose such burden upon it. The city au-

thoritics thereupon caused the poles of the plaintiff to be cut down and the wires removed. It was held that the action of the city in cutting down the poles and removing the wires of the plaintiff from the streets was justifiable, and an injunction restraining such action on its part was denied. In that case the court says:

"The right of the plaintiff to maintain and operate its wires in the streets could certainly be no greater than the right of railroads which by public authority occupy the streets and highways of the state. The state, in the exercise of its police power and the regulating control which it has over corporations created by its authority, may exercise a general supervision over such corporation. It may prescribe the erection of the tracks, the size and character of the rails, the precautions which shall be taken for the protection of the public, and the character and style of highway crossings; and no one has ever questioned that it may do whatever is necessary and proper for the public welfare in the control and regulation of the franchises which such corporations have obtained by statutory authority."

In that case it was further held that the fact that a compliance with the requirements of the city authorities would be attended with considerable expense was no answer to the right of the public, in pursuance of law, to require the plaintiff to comply with the prescribed regulations.

In the case of Barhite v. Telephone Co., supra, the court says:

"When a corporation of this kind [telephone company] is to avail itself of a legislative grant, the manner of its exercise, the location of its poles, the stringing of its wires, etc., are within the control and regulation of the local legislative body. That is one of the police functions committed to a municipality."

The city of Rochester has no right to deny to the defendant the privilege of occupying Oxford street with its wires, but it has the authority to require that such privilege, however acquired, shall be exercised with due regard to the claims of others, and in such manner as to inconvenience and injure the general public as little as possible. People v. Squire, supra; Barhite v. Telephone Co., supra. In order to determine the rights of the parties to this action, it is necessary to decide the conflicting questions of fact raised by their respective affidavits. If it should be found upon the trial of the action that it is impossible or impracticable for the defendant to occupy the conduit now in Oxford street, because of the fact that it contains wires charged with powerful currents of electricity, or for any other reason, the plaintiff would have no right or authority to require the defendant to use such conduit, because such requirement would be a substantial denial of the right to exercise the privilege acquired by it under the legislatve authority of the state. On the other hand, if it should be found, as claimed by the plaintiff, that the conduit of the Rochester Gas & Electric Company now in Oxford street is adequate and convenient, and in all respects proper, for the use of the defendant, and that to permit it to construct and maintain another and independent conduit in said street would greatly and unnecessarily inconvenience the public, under its police power the municipality would have the right to insist upon compliance with its request, and prevent the defendant from constructing an additional conduit in said street. This question of fact, and others almost equally important, which are the subject of dispute between the parties, should not be determined upon this mo-

tion or upon affidavits. "The sole object of an interlocutory injunction is to preserve the subject in controversy in its then condition, and, without determining any questions of right, merely to prevent the further perpetration of wrong, or the doing of any act whereby the right in controversy may be materially injured or endangered." High, Inj. § 4. At section 5 the same author says:

"It is to be constantly borne in mind that, in granting temporary relief by interlocutory injunction, courts of equity in no manner anticipate the ultimate determination of the questions of right involved. They merely recognize that a sufficient case has been made out to warrant the preservation of the property or rights in issue in statu quo until a hearing upon the merits, without expressing, and, indeed, without having the means of forming, a final opinion as to such rights. And, in order to sustain an injunction for the protection of property pendente lite, it is not necessary to decide in favor of plaintiff upon the merits; nor is it necessary that he should present such a case as will certainly entitle him to a decree upon the final hearing, since he may be entitled to an interlocutory injunction, although his right to the relief prayed for may ultimately fail; nor is the decision of the court in granting or refusing a preliminary injunction conclusive upon either the courts or parties on the subsequent disposition of the case by final decree."

In the case at bar the defendant conceded its intention, in case the injunction is vacated, to immediately enter upon, excavate the street in question, and construct a conduit therein, all of which it is the sole purpose of this action to prevent; and it is apparent that, if the defendant is now permitted to accomplish such purpose, the plaintiff would practically be without redress, irrespective of the final result of the action. To vacate the injunction would, in effect, permit the defendant to accomplish its purpose, wholly irrespective of whether or not it is entitled to exercise the rights which it claims in Oxford street, upon the facts as they may be found upon the trial of this action, and so the rights of the parties would be practically settled by such a decision. Without passing upon or determining any of the questions of fact raised by the affidavits of the respective parties, or indicating what rules of law may be applicable to the facts which may be found upon the trial, we are of the opinion that under all the circumstances the injunction should be retained until the decision of the action, and that the order appealed from should be affirmed.

Order affirmed, with $10 costs and disbursements. All concur, except ADAMS, P. J., not voting.