ment of 1901 to provide therefor. We do not think the Legislature intended to change the general policy of present, instead of future, assessments of estates of this nature which was clearly indicated in the amendment of 1899, and which was retained in the amendment of 1901.

This was the sole ground of the decision by the Surrogate's Court, and for his error in this regard the order appealed from should be reversed. Aside from the questions relating to the values of the property fixed by the appraiser, the only question raised by the notice of appeal to the Surrogate's Court was the one we have discussed, and we think, therefore, the other questions suggested in behalf of the appellants are not properly here for our consideration. Section 232 of the tax law, as amended by chapter 173, p. 380, Laws 1901, provides that the notice of appeal shall state the grounds upon which the appeal is taken, and therefore none except these specified can be considered. Deyo v. Ingraham, 149 N. Y. 539, 44 N. E. 185.

The order and decree appealed from should therefore be reversed, and the former order and decree affirmed, with costs, as hereinbefore stated. All concur.

---

DELAWARE, L. & W. R. CO. et al. v. CITY OF OSWEGO.

(Supreme Court, Appellate Division, Fourth Department. March 8, 1904.)

1. RAILROADS—PRIVILEGES IN STREETS—NONUSER—ABANDONMENT—EVIDENCE.

Where a railroad company acquired from a city permission to lay its tracks in a street, but did not do so, and nine years thereafter it again petitioned for the same rights that had previously been granted to it, and permission was again granted on certain conditions, but it did not lay any tracks under such permission, and seven years thereafter it again petitioned for such rights, and, on obtaining permission, laid its tracks, a finding that the road abandoned all the rights which it acquired under the first permission was warranted.

2. SAME—CONDITIONS OF PERMISSION—RESERVATION OF RIGHT TO REVOKE—VALIDITY.

The railroad law (Laws 1850, p. 224, c. 140, § 28, subd. 5) provided that nothing in that statute should be construed to authorize the construction of any railroad on or across any streets in a city. The Oswego city charter (Laws 1848, p. 163, c. 116, § 14) provided that the common council should have authority to permit the tracks of any railroad to be laid in or along any street. *Held,* that where the city granted a railroad permission to lay its tracks in a certain street, and the resolution contained a condition that the consent might be revoked at the pleasure of the city, and the railroad laid its tracks by virtue of such permission, the city had a right at any time thereafter to revoke such permission.

Appeal from Judgment on Report of Referee.

Suit by the Delaware, Lackawanna & Western Railroad Company and another against the city of Oswego. From a judgment dismissing the complaint, plaintiffs appeal. Affirmed.

The action was commenced on the 4th day of June, 1902, to perpetually restrain the defendant from removing that portion of plaintiffs' railroad constructed and being operated in Water street, in said city, from the southerly line of Bridge street to Seneca street; it being conceded that the defendant intended to remove the tracks of such railroad from that part of Water street,

and would have done so except for an order of the court granted herein, which restrained the defendant from taking such action until after the rendition of final judgment.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

W. S. Jenney, for appellants.
Elisha B. Powell, for respondent.

McLENNAN, P. J.   The plaintiffs claim the right to occupy the portion of the street in question by virtue of certain statutes under and .by virtue of which the Oswego & Syracuse Railroad Company was incorporated and was accorded certain rights; also under the general railroad law of the state, and under and by virtue of certain resolutions of the common council of the defendant authorizing the occupation of such street.   The defendant claims that, notwithstanding such statutes and resolutions, to which attention will be called, it had the right at any time, at its option, to compel the discontinuance of the use by the plaintiffs of the portion of Water street in question.

The Oswego & Syracuse Railroad Company was incorporated under chapter 270, p. 254, of the Laws of 1839, and was authorized to construct and maintain a railroad between the villages of Oswego and Syracuse by the most direct and eligible route.   Section 2, p. 254, provides:

"If the said corporation * * * shall not, within four years from the passage of this act, finish the said road, and put the same in operation, then the said corporation shall thenceforth forever cease, and this act shall be null and void."

Section 8, p. 255, is as follows:

"Sec. 8. The Legislature may at any time alter or repeal this act."

By various other acts said plaintiff was given additional privileges, certain restrictions were removed, and the time for the construction of the railroad was extended, but the power to repeal was at no time surrendered or modified by such statutes.   Chapter 17, p. 12, Laws 1841; chapter 320, p. 345, Laws 1845; chapter 270, p. 298, Laws 1847.

Prior to 1850 said plaintiff had completed its railroad between Oswego and Syracuse, so far as appears, upon the route originally designated by it, but it did not construct any part of said railroad upon Water street.   In fact, that is no part of its main line, but is a branch extending from the main line northerly, parallel with the river, to the harbor.

By chapter 140, p. 224, of the Laws of 1850, § 28, subd. 5, which was the general railroad law, it was provided:

"Nothing in this act contained shall be construed to authorize * * . * the construction of any railroad not already located in, upon or across any streets in any city, without the consent of the corporation of such city."

The city of Oswego was incorporated by chapter 116, p. 151, of the Laws of 1848.   Section 14, of title 3, p. 163, of the act, provides:

"Sec. 14. The common council shall have power, whenever in its opinion public convenience requires it, to determine and designate the route and grade of any railroad within the city, to sanction and permit the track of any railroad to be laid in or along any street or public ground, and to regulate the use of

locomotive engines, and of steam or other motive power, or cars, on any or every portion of any railroad within the city, and to prescribe and regulate the speed of cars upon any and every part of any such railroad, and to enact ordinances in pursuance of the powers hereby granted, imposing a penalty of not more than one hundred and fifty dollars upon the proprietors or corporations owning any such railroad, or their servants, for each and every violation of any such ordinance."

The same provision is incorporated in the amended charter of 1860, being page 811, c. 463, tit. 3, § 14, of the Laws of that year.

So that, by the charter of the defendant, as well as under the general railroad law of 1850, it was essential for the Oswego & Syracuse Railroad Company, in order to entitle it to lay its tracks in and upon Water street, to obtain the consent of the city.   In 1854 said plaintiff applied to the common council of the defendant for permission to construct, maintain, and operate its track upon certain parts of Water street, including the portion in question.   Thereupon the common council duly adopted the following resolution:

"Resolved, that the Oswego & Syracuse Railroad Company be and hereby are permitted to lay a track of their road on a line and grades delineated on a map and profile of new location made by Robert E. Ricker, and on file with the county clerk, commencing west of Sixth street in the Third Ward of the city of Oswego, thence extending easterly to First street, and by a curved line northerly to the intersection of Water and Oneida streets; thence through and along Water street to the harbor, with a branch track from Schuyler street through Front street to the harbor, on such grade as is laid down on said map and profile, and said company may make the said grade, and they shall grade all the streets intersected."

In 1855 (the following year) the Oswego & Syracuse Railroad Company constructed its railroad upon that part of the route described in the resolution, south of the southerly line of Bridge street, but made no attempt to occupy any portion of Water street north of the southerly line of Bridge street.   Instead, the plaintiff constructed a wharf immediately south of Bridge street, and the lake craft having freight to deliver or receive from the plaintiff was accommodated at that point in the river, instead of at the outer harbor, as was intended when the consent referred to was given.   This situation continued unchanged until the year 1870.   During all those years the plaintiff made no attempt to avail itself of the privileges granted to it by the resolution of 1854, so far as it related to that part of Water street north of the southerly line of Bridge street.   It should be said, however, that, so far as appears, the defendant made no request that the plaintiffs' tracks be extended to the harbor, and took no affirmative action to indicate that it was not satisfied with the situation as it existed.   In the year 1863 the plaintiff made application to the common council for permission to lay its tracks across Bridge street, and to extend the same down Water street as far as Market street, which was included in the resolution of 1854.   In said application the plaintiff asked for permission to occupy certain other streets not referred to in the resolution of 1854, and to make many changes in connection therewith.   The common council, by resolution duly adopted, granted said application upon certain conditions, many of them apparently onerous.   So far as appears, the plaintiff never accepted such consent, or did any act thereunder.   After the passage of the resolution of 1863, everything re-

mained as before until April, 1870, when the plaintiff the Oswego & Syracuse Railroad Company again petitioned the common council of the defendant for permission to extend its tracks along Water street, from the southerly line of Bridge street to the harbor, and also through Front street from its intersection with Water street to the harbor. In the petition the resolutions of 1854 and 1863 are referred to, and it is then stated:

"And the petitioner further shows that the said railroad company has availed itself of only a·part of the privileges so given [by such resolutions]; that now the commercial necessities of the city and port of Oswego require the extension of the railroad track through Water street to the harbor, * * * and your petitioner * * * prays * * * the renewal, if necessary, of the privilege of·laying such tracks. * * *"

On the 10th day of April, 1870, the prayer of the petitioner was granted by the common council of the defendant, by the adoption of the following resolution:

"Whereas, by a resolution of the common council of the city of Oswego, adopted on the 20th day of October, 1854, permission was given to the Oswego and Syracuse Railroad Company, among other things, to lay a track from Oneida street, 'through and along Water street to the harbor, with a branch from Schuyler street, through Front street to the harbor,' under which permission said railroad company have laid their tracks on Water street from Oneida street to the south line of Bridge street.

"And whereas, said railroad company now make application for leave to continue their road across Bridge street through and along Water street and Front street to the outer harbor, upon the grade as laid down on a map and profile here presented to the common council.

"Resolved, that the prayer of said petitioner be granted upon the following terms and considerations, namely: · That said railroad company shall plank between the rails of such tracks, and lay one tier of plank outside the rails on either side; shall grade Water and Front streets outside the rails, including the sidewalks, to correspond with the increased elevation given to any portion of said streets in laying the said tracks; shall pave said·Water and Front streets through the whole length thereof; shall keep the snow from said streets so as to make them reasonably passable for the public at all times; shall leave the roadways in, through and over or across which said tracks shall pass, in good order and condition for public use and travel; shall place the rails of said track level with the pavement or roadway; shall keep said pavement and planking in good repair; shall replace all pavement injured or broken up in the laying of said track or tracks, and keep the approach to the bridge on Bridge street in good order and condition. All of which is to be done under the direction and approval of the common council, or of the street commissioner of said city. And in case said railroad tracks or any part thereof is abandoned or changed, the said railroad company shall fill all excavations made in said streets by the laying of the tracks therein, and restore them and the intersecting streets to their present grade and condition, if required by the common council so to do. And said railroad company shall in good faith obey all ordinances, directions and resolutions of the said common council of said city in the premises. This permission to remain in force and effect during the pleasure of the common council, and is subject to such modifications, changes and alterations as said council may, at any time or times, impose or direct."

Immediately thereafter the plaintiff laid its tracks in Water street, from the southerly line of Bridge street, and ever since that time it, or its lessor, the Delaware, Lackawanna & Western Railroad Company, has been engaged in operating the same in connection with its tracks laid in Water street south of Bridge street under the resolution of 1854. By resolution of its common council passed December 23, 1901, the de-

fendant assumed to rescind the permission given to the plaintiffs by the resolution of 1870 to construct, maintain, and operate its railroad in Water street, between the southerly line of Bridge street and Seneca street, and directed the plaintiffs to remove their tracks therefrom within four months, and further directed that, in case the plaintiffs failed so to do, the department of works be empowered to remove the same. The plaintiffs having neglected to comply with the direction, the common council, by resolution passed June 3, 1902, directed the department of works of the defendant to at once remove the tracks of plaintiffs' railroad from Water street, from the southerly line of Bridge street to the north line of Seneca street. To prevent the carrying out of such purpose on the part of the defendant, this action is brought.

The first question presented by this appeal is whether or not the plaintiff the Oswego & Syracuse Railroad Company, prior to 1870, had abandoned all rights acquired under the resolution of 1854 in the portion of Water street in question. Concededly, for more than 15 years it made no attempt to avail itself of the consent given. In 1863, although still apparently desiring to reach the harbor by laying its tracks in that part of the street, no attempt was made to do so under the 1854 resolution. Apparently the company wanted additional rights, as appears by its application of that date, which was granted, but so burdened with conditions that it was not accepted, and nothing was done under it. There was then another wait of seven years, during which time nothing was done in the premises. In 1870 the plaintiff again sought permission from the common council to occupy that portion of Water street, presumably because it was considered necessary, and the resolution of 1854 was regarded as insufficient. When the resolution of 1870 was passed, said plaintiff immediately laid the tracks in question, and has ever since operated the same.

Upon these facts, taken in connection with the recitals in the plaintiff's application, we think it should be held that it abandoned all the rights which it had acquired under the resolution of 1854.

Wood, in his work on Railroads, p. 890, says:

"The question as to whether there has been an abandonment or not is usually one of fact, to be determined by the circumstances of each case. A mere nonuser for a long period, less than the period prescribed in the statute of limitations—as, in one case thirteen years—is not sufficient to establish abandonment."

In the case at bar, as we have seen, there was not only nonuser for more than 15 years, but during that time the plaintiff, in at least two instances, sought to acquire the same rights that were granted to it by the resolution of 1854, which resolution it now claims at all times entitled it to occupy the part of Water street in question. During all the time from 1870 to 1901 did the defendant have the right to believe that the plaintiff was occupying the street pursuant to the 1870 resolution, or should it have understood that such occupancy was under and by virtue of the 1854 resolution? We think the evidence clearly establishes that the portion of the railroad in question was constructed under the resolution of 1870, and that upon its acceptance all the rights which the plaintiffs acquired under the resolution of 1854 in respect to that

part of ·Water street ceased and terminated, and that thereafter the only consent available to the plaintiffs was that contained in the resolution of 1870.

The next and perhaps more serious question is whether or not the defendant, at its pleasure, had the right to rescind the resolution of 1870, and annul the rights which the plaintiffs acquired thereunder. Such is the defendant's right, according to the express language of the resolution, namely, "this permission to remain in force and effect during the pleasure of the common council. * * *" It is insisted by the learned counsel for the appellants that, under the defendant's charter and other statutes, it was only authorized to consent or refuse to consent to the construction of plaintiffs' railroad upon the street in question, and to impose reasonable conditions as to the manner of constructing and operating the same; in effect, that the right of the plaintiffs to occupy the street was conferred by the Legislature, subject only to the consent of the municipality, and that, when such consent was once given, it became, as to the municipality, irrevocable, notwithstanding the right of revocation was expressly reserved. It is urged that the decision of this court in Delaware, Lackawanna & Western R. Co. v. City of Buffalo, 4 App. Div. 562, 38 N. Y. Supp. 510, affirmed in 158 N. Y. 266, 53 N. E. 44, fully sustains the proposition. It·should therefore be carefully considered. In that case the plaintiff filed a map and profile of its proposed route through the city of Buffalo in the office of the clerk of Erie county, which showed, among other things, that·such route was designed to cross Main street, one of the thoroughfares of that city. Thereafter the city, by resolution of its common council, duly granted permission to the railroad ·company to construct its road along the proposed route, but directed the crossing of Main street to "be by bridge having a clear roadway underneath at least twelve feet in height and twenty-eight feet in the clear, * * * and subject to the approval of the city engineer." The railroad company, availing itself of the permission thus granted, proceeded at once to construct its crossing, but without consulting with or receiving the approval of the city engineer, and, in doing so, located both abutments of·the bridge in the street, whereupon it was notified by the city engineer that the plan of crossing did not meet his approval. Soon thereafter the common council directed the company to construct a span of at least 66 feet in width in carrying the bridge over the street. Notwithstanding such resolution, and after a conference with the city engineer and the defendant's street committee, the plaintiff proceeded with and completed the construction of its bridge in such manner that a clear roadway was left underneath the structure 12 feet in height, and 42½ feet in the clear; locating, however, both abutments entirely within the limits of the street. The evidence showed that such construction rendered the use of the street dangerous and unnecessarily interfered with its use as a highway; that it was entirely feasible to carry the plaintiff's tracks over the highway by means of a single span. The common council of the city did not formally approve of the action of the city engineer and the street committee, and finally adopted a resolution directing the street commissioner to remove the abutments from said street. To restrain the city of Buffalo from so doing, that action

was brought. It was decided by this court that the right of a railroad company to cross the streets of a city is derived from the Legislature, and that it has supreme power over the streets of cities, as well as over the highways of the state at large, although the assent of a municipality must be first obtained, as a prerequisite to the exercise of that right. It was also held that the approval of a municipality, when so given, is irrevocable. It was further held that the state, by the general railroad law, had authorized the plaintiff to cross Main street with its railroad, and that the power so to do was lodged in the state exclusively; in effect, that there was no power in the municipality to grant such right, but that the consent of the city was also a prerequisite to the exercise of such right, and thereby it was clothed with the power of determining the manner of such crossing, provided it did not authorize a construction which would unnecessarily interfere with the usefulness of the thoroughfare. There is nothing in the decision of the case referred to which can be construed as holding that a railroad company, under the power conferred by the Legislature of the state, may cross a street or highway where it pleases, or that a municipality is bound to consent to any proposed crossing; and we think such is not the law, but that, upon the other hand, the right conferred by the Legislature upon the municipality to consent involves the right to impose any and all reasonable conditions upon the railroad company in consideration of such consent. In case a municipality refuses its consent unreasonably, or assumes to impose unreasonable conditions, the statute provides a method by which the manner of crossing may be finally determined, independent of the desires of the railroad company, or the determination of the municipality in the premises. In the case referred to supra, it was held that the bridge, as constructed by the plaintiff, unnecessarily obstructed the street, and that the city had the right to cause the removal of such obstruction. In the case at bar we may assume that the plaintiffs had a right to construct, maintain, and operate a railroad upon Water street, by virtue of the general railroad law of the state, provided it first obtained the consent of the defendant. When application was made for such consent by the plaintiff in 1870, as a condition of granting the same the defendant imposed certain conditions—among them, as we have seen, that such consent might be revoked at its pleasure. If the plaintiff was not satisfied with such conditions—one or any of them— and if unreasonable, and it had the right to construct its railroad upon the street in question, it should have obtained the right to construct its road with those conditions, or such of them as were unreasonable, eliminated in the manner provided by law; but instead the plaintiff said, in effect, "We are satisfied with the consent, burdened with all the conditions specified in the resolution." The plaintiff accepted the same, and thereupon immediately constructed the railroad in question.

No case has been called to our attention which holds that where the right of revocation is expressly reserved in a resolution giving the consent of a municipality to a railroad company to construct its railroad in the streets of a city, such company, after having accepted the same and acted thereunder, may insist that such reservation to revoke was unauthorized and of no force and effect, and that, notwithstanding such reservation, it had the right for all time, or at least dur-

ing its corporate existence, to maintain and operate its railroad in such street.

In this case the referee said in his opinion, which is made a part of the record:

"Some question is made that the railroad company failed to comply with the provisions of the resolution of 1870 in relation to keeping Water street in repair, but the evidence is clear that the company substantially complied with the terms of the resolution, and the officers of the city of Oswego having charge of its streets testified that, whenever a request was made to fix said street, the same was complied with by the railroad company; and there are no grounds which would authorize the court to render judgment for the defendant upon the claim that the railroad company has failed to comply with any of the conditions contained in the resolution of 1870."

We think the evidence fully justifies the conclusion thus expressed by the referee. We must therefore determine whether or not it is within the power of a municipality to revoke a consent given by it to a railroad company to construct and maintain its railroad upon the streets of such municipality solely upon the ground and because such consent reserved the right to the municipality to revoke the same at its pleasure, when all the conditions imposed, perhaps involving great expense, have been complied with and performed by the railroad company. The question is important, and we have been unable to find any decision in the courts of this state which is decisive of the proposition. Dillon on Municipal Corporations, § 706, states the rule to be:

"Where, under the general statutes of a state, a railroad company was forbidden to construct and operate its railroad upon the streets of an incorporated city without the assent of the corporate authorities, these are not limited to a simple granting or denial of the right of way, but may prescribe the conditions on which they will give their assent; and, if these are accepted by the railroad company, they are binding upon the parties."

Unquestionably the city of Oswego had the right to say "No" in answer to the plaintiff's application made in 1870, and to have stopped there. Notwithstanding such decision, the plaintiff undoubtedly might have applied in the manner prescribed by law for such permission; but, instead of denying the application, the defendant said to the plaintiff, in effect, "You may construct this branch of your railroad upon the street in question, but only upon certain conditions, one of which is that, when the public interests demand it, you shall discontinue its use and remove your tracks therefrom." The plaintiff accepted such condition, as it did all others specified in the resolution, and constructed its railroad. Requiring a railroad company, as a condition of obtaining the consent of a municipality to construct and maintain a railroad in and upon a certain street, to pave such street, change its grade, or build a depot at a specified place, is no different, upon principle, from requiring such company to discontinue the use of such street for railroad purposes after the lapse of a certain time, or at the pleasure of the municipality. The last condition mentioned might be more reasonable than either of the others. Suppose a railroad company should make application to the authorities of a city for permission to construct and operate a steam railroad upon a street in the extreme suburbs, not built upon, and but little used by the public. Might it not be a very reasonable and proper condition to impose, that, when such street should be-

come lined upon either side with business places or residences, the tracks of the railroad should be removed? In many cases which might be suggested, a particular street might be occupied temporarily by a railroad company, to the advantage of the company and of the people of the municipality as well, whereas such occupation, at the expiration of a term of years, would be a menace to the lives and property of the inhabitants. We can discover no good reason why a consent given under the conditions first mentioned, and which expressly reserves the right to revoke the same, may not properly be revoked when the other conditions arise. May not a city say to a railroad corporation which applies to it for permission to construct a railroad upon a certain street, "You may construct and operate your railroad thereon for a certain specified time, and no longer"? If such condition is unreasonable, and the railroad company has a right to construct and operate such road independent of such consent, the statute provides how its rights may be protected; but, if it accepts the consent given with such condition imposed, we know of no reason why such railroad company ought not to be compelled to comply with the terms of its engagement or contract, to wit, that it would cease to use such street for its purposes at the expiration of the time mentioned.

We think it is not important whether the fee of the street in question was in the state of New York, in the city of Oswego, or in the owners of the property abutting upon such street. In any event, it was dedicated to the public, and the city of Oswego was given control and jurisdiction over it, the same as all other streets in said city; and the defendant had the right to determine, having regard to the rights of the public, how such street should be used.

These considerations lead to the conclusion that the judgment appealed from should be affirmed, with costs.

Judgment affirmed, with costs. All concur.