THE PEOPLE ex. rel. THE WEST SIDE STREET RAILWAY COMPANY, Appellant, v. JOSEPH E. BARNARD, as Comptroller, etc., Respondent.

*It seems* that, under the act "to secure adequate compensation for the right to construct  *  *  *  street railroads in cities" (Chap. 65, Laws of 1886, as amended by chapter 642, Laws of 1886), and under the provisions of the state Constitution applicable to the construction of such railways, the municipal authorities have the absolute power to grant or withhold their consent to the construction of such a railroad, and may impose any condition, which, in the exercise of their discretion, they deem proper as the terms upon which their consent will be given.

In the notice of sale, however, of the right to use a street for such a purpose required by said act (§ 1), the conditions must be specified, and no other conditions can be inserted in the consent, or exacted or imposed upon the successful bidder, than those required by the act and the notice.

Where, therefore, the common council of the city of Buffalo, upon application made to it, consented to the construction of a railway in certain of the city streets, published a notice of sale, as prescribed in the statute, and the city comptroller awarded the franchise to the highest bidder, but that officer required a bond containing conditions not required by the statute, the resolution of the common council or the notice of sale, and refused to accept a bond containing all the prescribed conditions because it did not contain those so required by him, while expressly admitting that the penalty of the bond and the sureties were satisfactory, *held*, that the comptroller had no right to exact a bond, such as was required by him, but was bound to accept and approve of the bond presented ; and that the purchaser was entitled to a *mandamus* to compel such acceptance and approval.

Certain other conditions contained in the bond presented were not objected to by the comptroller, and were mainly for the performance of such things as the law without any agreement, requires the purchaser to perform.  *Held*, that such conditions were not illegal or against public policy; and that it could not be claimed, as an objection to the issuing of the writ, that the bond would be void, as given *colore officii*, because it was voluntarily tendered to obtain a franchise, and certainly, after having compelled the comptroller by *mandamus* to accept and approve the bond, it could not be maintained by the obligors that it was illegally exacted.

The common council required, as a condition to its consent, that the purchaser of the franchise should carry passengers, for a single fare, to and from points beyond the termini of the proposed route over the road of other street railways.  *Held*, that this was a condition the common council had a right to impose.

*People ex rel. W. S. Street R. Co.* v. *Barnard* (48 Hun, 57), reversed.

(Argued October 2, 1888; decided October 16, 1888.)

Appeal from order of the General Term of the Supreme Court in the fifth judicial department, made March 27, 1888, which affirmed an order of Special Term denying the relator's motion for a peremptory writ of *mandamus* requiring the comptroller of the city of Buffalo to accept and approve a bond executed by the relator, with two sureties, and tendered to said officer, as a compliance with the requirements of the statute, on purchase by the relator of the franchise to build, construct and operate a street railroad upon certain streets of said city. (Reported below, 48 Hun, 57.)

The facts, so far as material, are stated in the opinion.

*F. Brundage* for appellant. The power to impose the terms or conditions of the grant rests with the common council and not the comptroller. (Laws 1886, chap. 642, §§ 1, 3.) A construction that will sustain, rather than defeat, the action of the local authorities should be put upon their acts where such construction is possible. (*Mayor, etc.,* v. *Broadway, etc., R. R. Co.,* 97 N. Y. 275, 281.) The bond tendered by the relator fully complied with the statute and was in every respect a valid bond; it was, therefore, the duty of the comptroller to accept · and approve it, and having refused to perform that duty, he may be compelled by *mandamus* to do so. (*People* v. *Common Council,* 77 N. Y. 503; 78 id. 56; High on Extr. Legal Remedies, § 323; Code Civ. Pro. § 2070.) The order is appealable to this court; it affects a substantial right. (Code, § 190.) The facts were entirely undisputed and simply required the court to determine, as matter of law, whether the refusal of the comptroller was legal or illegal. In such cases the order is appealable. (*People ex rel. McMartin* v. *Board of Police,* 107 N. Y. 235.)

*William F. Worthington* for respondent. The comptroller, in determining the form and conditions of the bond to be given by the relator, was not performing a ministerial duty, but one requiring the exercise of judgment and discretion, and while he proceeds in good faith his determination can

neither be dictated nor controlled by the courts. (Chap. 642, Laws of 1886, § 1; High on Extr. Legal Remedies, §§ 33a, 34, 42, 46, 47, 48, 80, 81, 92, 94, 323, 325, 326; Dillon on Municipal Corporations [3d ed.], §§ 827, 832; *People ex rel. Demarest* v. *Fairchild,* 67 N. Y. 334; *Howland* v. *Eldridge,* 43 id. 457; *People ex rel. Belden* v. *Contracting Board,* 27 id. 381; *People ex rel. Hammond* v. *Leonard,* 74 id. 443; *People ex rel. Francis* v. *Common Council,* 78 id. 33; *People ex rel. Ostrander* v. *Chapin,* 105 id. 309; 104 id. 96; 103 id. 634; *Swan* v. *Grey,* 44 Miss. 393; *In re Pickett,* Spencer [N. J.] 134; *McDuff* v. *Cook,* 65 Ala. 430°; *People* v. *St. Patrick's Cathedral,* 10 Week. Dig. 124; *People* v. *N. Y., L. E. & W. R. R. Co.,* 104 N. Y. 58; *People* v. *Campbell,* 72 id. 496; *People* v. *Thompson,* 99 id. 641.) The relator has failed to show a clear legal right to have its bonds accepted and approved, and no *mandamus* should issue. (Dillon on Mun. Corp. [3d ed.] § 287; *People* v. *West Troy,* 25 Hun, 179; *People ex rel. McMackin* v. *Board of Police,* 107 N. Y. 235; *N. Y. Cable Co.* v. *Mayor, etc.,* 104 id. 32–38.) The comptroller having rejected the bond tendered by the relator, and having canceled its bid upon its failure to furnish satisfactory security, after giving it ample time for such purpose, *mandamus* will not issue to compel a reversal of his decision, even though the decision be wrong, in such case, if there be any remedy, it is by *certiorari.* (*People* v. *Barnes,* 44 Hun, 574; *People* v. *Chapin,* 39 id. 230; 103 N. Y. 634; *State* v. *Young,* 84 Mo. 90, 94; *People* v. *McCormic,* 106 Ill. 184; *Dechert* v. *Commonwealth,* 103 Pa. St. 229; *Commonwealth* v. *Mitchell,* 82 id. 343; *United States* v. *Whitney,* 6 Cent. Rep. 290; *Seamore* v. *Ely,* 37 Conn. 103; High on Extr. Legal Remedies, §§ 93, 323, 327, 328.) In considering the question as to what are reasonable conditions to be required in this bond, it is necessary to bear in mind that franchises or grants of this character are to be construed most strictly against the grantor and most strongly in favor of the municipality. (*Mayor, etc.,* v. *Dry Dock Co.,* 47 Hun, 199; *Mayers* v. *Broadway, etc., M. R. R. Co.,* 97 N. Y. 275, 281; *Turnpike*

*Co.* v. *Illinois*, 96 U. S. 68; *Mills* v. *St. Clair Co.*, 8 How. [U. S.] 569; *Bradley* v. N. Y. &. N. H. R. R. Co. 21 Conn. 294; *Burns* v. *Multnomah R. R. Co.*, 15 Fed. Rep. 177, 185; *Rice* v. *M. & W. R. R. Co.*, 1 Black [U. S.] 358; *Charles River Bridge Co.* v. *Warren Bridge Co.*, 11 Peters, 544; *Richmond R. R. Co.* v. *Louisiana R. R. Co.*, 13 How. Pr. 81.) The words "adequate security," as used in this statute, have a broad meaning and mean such security as renders a matter sure, and as will make certain the fulfillment of an obligation. (Bouvier's Law Dictionary; Webster's Dictionary; *Storm* v. *Waddell*, 2 Sand. Ch. 506; *Foot* v. *Webb*, 59 Barb. 48; *People ex rel. Belden* v. *Contracting Board*, 27 N. Y. 381; *People ex rel. P. C. S. Bk.* v. *Cromwell*, 102 id. 477; Laws of 1886, chap. 642, §§ 1, 3; *N. Y. Cable Co.* v. *Mayor, etc.*, 104 N. Y. 26, 30; *In re N. Y. El. R. Co.*, 70 id. 354; 1 Kent's Com. 464; *Mayor, etc.*, v. *Sands*, 105 N. Y. 210.) The statute made it the duty of the relator to prepare and tender a proper bond; it provides that the comptroller may cancel the bid "if the bidder shall not furnish satisfactory security." (*Ross* v. *People*, 78 Ill. 375.) The comptroller has exercised the power conferred upon him and canceled the bid, for the relators refusal to furnish satisfactory security; and, in such case, the furnishing of security being a condition precedent, the statute has worked a forfeiture. (*Oakland, etc., R. R. Co.* v. *R. R. Co.*, 45 Cal. 365; *Davis* v. *Gray*, 16 Wall. [U. S.] 229, 230.) The relator must show that it has demanded of the comptroller the precise thing it seeks, and it has not presented to or given the comptroller an opportunity to accept a bond with any other conditions. (High on Extr. Legal Remedies [2d ed.] § 41.) The rule of law applicable being a reasonable time, it cannot be said that eleven days was not a compliance. (*Davis* v. *Gray*, 16 Wall. [U. S.] 23; 4 Kent's Com. m. p. 125, 126.) The making of the order appealed from rested in the discretion, of the General Term, and, on the facts presented, it does not appear that such discretion was abused. (*Clarke* v. *Lowrie*, 82 N. Y. 580; *Fisher* v. *Gould*, 81 id. 228; *Noyes*

v. *Child. Aid Soc.* 70 id. 481; *In re Dederick,* 77 id. 595; *N. Y. Cable Co.* v. *Mayor, etc.,* 104 id. 13; *People ex rel. Lunney* v. *Campbell,* 72 id. 496.)

EARL, J. It is provided in section 1 of chapter 642 of the Laws of 1886, that the local authorities of any incorporated city to whom application may be made for the construction, maintenance, use, operation or extension of a street railroad through any of the streets of such city, must provide, as a condition of the consent to the use of such street, that the right, franchise and privilege of using the same shall be sold at public auction " to the bidder who will agree to give the largest percentage per annum of the gross receipts of such company or corporation, with adequate security, as hereinafter provided, for the fulfillment of such agreement and for the commencement and completion of such road according to the plan or plans and on the route or routes fixed for its construction, within the time or times hereinafter designated and prescribed therefor;" that the local authorities of any city may give such consent to any applicant therefor, duly incorporated and existing under the laws of this state for the purpose of providing street railroad facilities in the city, and the bidder to which such consent may be sold shall be an incorporated railroad company, organized to construct and operate a street railroad within such city; that, prior to such sale, notice of the time and place of sale and the conditions upon which the consent of the city authorities to construct and operate the road will be given shall be published as provided in the act; that the comptroller, or other chief fiscal officer of the city, shall attend and conduct the sale to be made under the provisions of the act; that the bidder or bidders to whom the consent or license shall be sold shall commence the construction of the road within one year and complete the same within three years from the date of sale. Section 3 provides that the security required by section 1 of the act "shall be a bond or undertaking in writing and under seal, in such form, condition, amount

and sureties as shall be required and approved by the comptroller or other chief fiscal officer of any such city, and by the trustees of any such village." Under this act and under the constitutional provisions applicable to the construction of street railways, the municipal authorities have the absolute power to grant or withhold their consent to the construction of street railways; and they may impose any conditions, however onerous and difficult to perform, which seem to them, in the exercise of their discretion, to be proper, as the terms upon which their consent will be given. But in the notice of sale provided for, the conditions which they impose must be specified, and no other condition can be inserted therein and none other can be exacted or imposed by the officer conducting the sale. The only security required by the law from the purchaser at the sale is the bond or undertaking to secure the payment of the percentage of gross receipts agreed to be paid and for the commencement and completion of the road within the times specified. The law does not require the purchaser to give any other security, and no other security can, by the terms of the law, be exacted. The local authorities may, undoubtedly, in giving their consent to the use of the street for the street railway, impose as a condition that a bond shall be given by the purchaser at the sale, containing any stipulation or conditions which they may see fit to prescribe. But, in the absence of such action by the local authorities, the comptroller has no right, under section 3, to exact security for the performance of anything except the three things specified in the act, and the conditions which he may require to be included in the bond are such only as relate to and are appropriate to secure such performance.

Now what happened here? The common council of the city of Buffalo, upon due application made to it, did, by resolution duly passed on the 6th day of June, 1887, consent to the construction, operation and maintenance of a street railway in and along the following streets and places in the city of Buffalo, viz.:

Sickels — Vol. LXV.    70

" Commencing at the intersection of Virginia and Park streets so as to connect with the track belonging to the Buffalo East Side Railway Company in Virginia street; thence northerly along Park street, with a single track, to Allen street, so as to connect with said company's tracks in Allen street; thence westerly, and upon said tracks of the Buffalo East Side Railway Company in Allen street to Fremont place; thence northerly in and along Fremont place, with a single track, to Elmwood avenue; thence northerly along Elmwood avenue, with double tracks, to Forest avenue; subject to the condition, amongst others, that such franchise should be sold at public auction, pursuant to chapter 642 of the Laws of 1886, passed June 15, 1886, and that the rails to be laid and used in the construction of said railroad should be of the kind known as the 'Richards Patent Girder Rail,' and to be laid so that their edges shall be flush with the pavement; and, further, that the company receiving the grant should, at all times, keep and maintain the pavement between its rails in good condition and repair; and that passengers should be carried, by the company receiving the grant, from Seneca street through the said route to Forest avenue for a single fare of five cents for one continuous passage."

And notice of sale, as prescribed in the statute, was thereafter published as follows:

" Notice is hereby given that the right, privilege and franchise of using the streets, avenues and public places in the city of Buffalo, hereinafter described for the purposes of a street railroad, will be sold by the comptroller of said city, at his office at the city and county hall, at Buffalo, N. Y., on the 6th day of August, 1887, at 10 o'clock A. M., at public auction, to the incorporated railroad or railway company organized to construct, maintain and operate a street railroad in the city of Buffalo, which shall be the bidder who will agree to give for such right, privilege and franchise the largest percentage per annum of its gross receipts; with security for the fulfillment of such agreement, and for the commencement of said road within one year, and for the completion thereof within

three years from the date of said sale, according to the plan and along the route hereinafter specified. The security to be given by the purchaser upon such sale as aforesaid shall be a bond or undertaking in writing, and under seal, in such form, condition, amount and securities as shall be required and approved by said comptroller. The purchaser at such sale of such grant, right or privilege shall take the same only upon and subject to the following further conditions, viz. :

" *First.* That the rails to be laid in the construction of said railroad shall be of the kind known as the Richard's Patent Girder Rail; the said rails to be so laid that their edges shall be flush with the pavement, and the purchaser at said sale at all times to keep and maintain the pavement between its rails in good condition and repair.

" *Second.* That the purchaser, as hereinbefore specified, shall charge no greater than a five cent fare for one continuous passage from Seneca street along Main street and over the route specified in this grant to Forest avenue.

" *Third.* The right, privilege and franchise as aforesaid to be sold, is the right, privilege and franchise of using the following streets, avenues and public places in the city of Buffalo, for the purpose of constructing, operating and maintaining a street railroad, as follows : (As stated in the resolution of the common council.)

" WILLIAM E. DELANEY,

"*City Clerk.*"

The relator bid at the sale thirty-six per cent of its gross receipts per annum, which was the highest bid as determined by the comptroller, and the franchise was awarded to it, subject to its giving security as required by chapter 642 of the Laws of 1886. Thereafter, and within a reasonable time, the comptroller caused to be prepared and presented to the relator for its execution, and then and there demanded and required it to execute, a bond, in the penalty of $20,000, containing the conditions prescribed in the statute, and many other conditions. The relator deeming the bond illegal and unauthorized by the law of 1886, made objections to certain conditions contained

therein and refused to execute the same. Thereupon it caused to be prepared and executed a bond, which it presented to the ·comptroller, in the penalty of $20,000, in the same general form as the bond demanded by the comptroller, containing the conditions prescribed in the law of 1886, as well as some further conditions which were also, with others, contained in the bond prepared by the comptroller; and it demanded that he should accept and approve the bond as the security required by the act of 1886. This he refused to do, giving as a reason for such refusal that it did not contain all the conditions specified in the bond presented by him to the relator, expressly admitting, however, that the sureties and the amount of the penalty were satisfactory. No objection was made to the general form of the bond, or that it did not contain all of the conditions required by the statute of 1886, or by the resolution of the common council or by the notice of sale as published.

We are of opinion that the comptroller was bound to accept and approve the bond. It contains all that the statute requires, and he had no right to exact any other conditions. He did not object, and could not object, to the other conditions contained in the bond. His sole objection was that some conditions were omitted from the bond, which he determined ought to be contained therein. The conditions, aside from those required by the statute for the payment of a percentage of gross receipts and for the commencement and completion of the road within the prescribed times, were harmless, not illegal or against public policy, but were mainly, if not exclusively, conditions for the performance of such things as the law, without any agreement whatever, required the relator to observe and perform. There is no ground for claiming that the bond would be illegal and void as given *colore officii* because it was voluntarily executed and tendered to obtain a franchise and privileges from the city; and certainly, after by *mandamus* compelling the comptroller to accept and approve the bond, it could not be maintained by any of the obligors that it was illegally exacted from the principals. The bond

being sufficient and unobjectionable in form, and the comptroller having approved the amount of the penalty and the sufficiency of the sureties, he had no further discretion to exercise and was bound to accept and approve it, and these further acts were administrative merely. The bounds of discretion and judicial action having been passed, this is a proper case to compel the performance of his further duties by *mandamus*

It has been said that the action of the common council was illegal and void because it required the purchaser of the franchise to carry passengers from Seneca street through the route specified in the grant for a single fare of five cents for one continuous passage. The resolution undoubtedly required the railway company taking the grant to carry passengers to and from points beyond one of its termini. This was a condition which it could impose. It might be difficult for the company taking the grant to perform it; but it was not impossible to perform it because, under the statutes, there was a way by which the relator could obtain the right to run upon the tracks of the East Side Street Railway Company, which owned the road between Seneca street and one terminus of the route granted. If it should turn out that it could not comply with the terms of the grant, in the respect mentioned, the result would simply be that it would be exposed to the forfeiture of its franchises and rights.

It may be that the common council did not sufficiently protect the rights of the city and the interests of the public in the resolution granting consent to the use of the streets for the railway. But there is no help for that now. Its action is final and everybody must abide by that. Its neglect, if there was any, cannot be remedied by exacting of the purchaser a bond which it is not bound to give. If, however it should abuse its privileges or violate any law or condition applicable to it, or so operate its road as to annoy, oppress or seriously discommode the public, the attorney general, in behalf of the People, or the local authorities, in behalf of the city, or the legislature in the exercise of the sovereign power, will, doubt-

less, find or devise some adequate remedy for every serious grievance. Our conclusion, therefore, is that the orders of the General and Special Terms should be reversed and the writ of peremptory *mandamus* issued without costs.

All concur, except DANFORTH, J., not voting.

Ordered accordingly.