PEOPLE ex rel. FRONTIER ELECTRIC RY. CO. v. CITY OF NORTH TONAWANDA et al.

(Supreme Court, Special Term, Niagara County. December 16, 1910.)

1. MANDAMUS (§ 98*)—RAILROADS—USE OF STREETS.

If a city, which has no power of regulation of a railroad passing through it, but which is limited merely to the decision of where the crossings shall be, should impose conditions wholly beyond its authority in assenting to the construction of railroad tracks across a street, pursuant to Railroad Law (Laws 1910, c. 481 [Consol. Laws, c. 49]) § 21, requiring its assent before a railroad shall be constructed in a street, the court could compel it by mandamus to give its assent free from such unauthorized restrictions.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 142, 149; Dec. Dig. § 98.*]

2. RAILROADS (§ 93*)—USE OF STREETS—OCCUPATION BY RAILROAD—ASSENT OF CITY—CONDITIONS.

Railroad Law (Laws 1910, c. 481 [Consol. Laws, c. 49]) § 21, providing that no railroad shall construct its road in or across any street of a city without the city's assent, authorizes a city to impose any conditions or restrictions upon granting its assent, whether reasonable or not; the assent being merely an offer, which the railroad company may accept or refuse.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 260–265; Dec. Dig. § 93.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Application for mandamus by the People, on the relation of the Frontier Electric Railway Company, against the City of North Tonawanda and others. Application denied.

James P. Lindsay (L. L. Babcock, of counsel), for relator.

Norman D. Fish, for defendants.

POUND, J. Relator is a railroad corporation, organized and authorized to build and operate a railroad from the city of Niagara Falls to the city of Buffalo. Its route extends through the city of North Tonawanda, and across certain streets of such city.

Section 21 of the railroad law (Laws 1910, c. 481 [Consol. Laws, c. 49]) provides that:

"No railroad corporation shall * * * construct its road in, upon or across any streets of any city without the assent of the corporation of such city."

Relator presented an application to the common council of the city of North Tonawanda for the required assent to construct its road across various streets. On the 20th day of September, 1910, the common council granted its assent, subject to many terms, conditions, limitations, and restrictions; the last condition being that the relator should within 90 days accept the same, and that the assent should not take effect until so accepted.

It is claimed by the relator that many of the conditions imposed by the common council are beyond the powers of the municipality, illegal, and void, and that the court should, by writ of peremptory mandamus, compel the common council to eliminate them from the resolution of assent adopted by it.

It would seem that the assent so given is nothing more than an offer, a step in negotiations between the city and the relator, which the relator is free to accept or reject, and that the court might, therefore, refuse on this application to interfere with such negotiations. The 90 days in which the relator must act on the offer of the city have not expired. This assent, while void unless accepted, is doubtless valid and binding, conditions and all, if accepted by the relator.

It would further seem that the court should not, in any event, compel the municipality to convert a qualified assent or offer of assent into a practically unqualified assent, even though it should hold that certain of the restrictions contained therein are beyond the powers of the municipality.

If the municipality is limited in giving the assent to the bare question of deciding where the crossings shall be located, and if the Legislature intends to vest in it no general powers of regulation of speed of trains, method of guarding crossings, rates of fare, and the like, which relate to the method of enjoying the franchise granted to the railroad under legislative authority, and if the municipality, in giving its consent, goes wholly outside the scope of its authority in imposing limitations thereon, the court may compel the municipality to give its consent free from such unauthorized restrictions and limitations. People ex rel. Eastern Parkway Co. v. Kennedy, 97 App. Div. 103, 89 N. Y. Supp. 603.

But it must be conceded that the municipality has some power of regulation here. Non constat, if this offer is not accepted, or if limitations therein are held to be ultra vires, it will not impose other and lawful limitations upon its assent. If this were an assent, and not an offer, the problem might be more difficult of solution. But it is clear that a proffered assent, on the terms proposed, if not accepted by the relator, is a refusal, rather than an assent, and should not be converted into an assent by the court.

The main question as to the powers of the municipality under the provisions of section 21 of the railroad law, above quoted, has not been directly passed upon by the courts in any reported case cited on the briefs of counsel. Various cases relating to street surface railroads have sustained the absolute right of the municipal authorities to grant or withhold their consent to the construction of street railroads, and to impose any conditions as the terms upon which their consent will be given. People ex rel. W. S. St. R. Co. v. Barnard, 110 N. Y. 548, 18 N. E. 354.

But section 173 of the railroad law expressly gives the local authorities plenary powers to impose conditions upon which their consent to the construction of a street surface railroad may be granted, other and different from those imposed by the general railroad law. South Shore Traction Co. v. Brookhaven, 116 App. Div. 749, 102 N. Y. Supp. 75. And it is urged by the relator that such cases have no controlling authority here.

It has been held, however, in Allegheny City v. Railroad, 159 Pa. 411, 28 Atl. 202, that under an unqualified provision merely that "no street surface railway shall be constructed within the limits of any city * * * without the consent of the local authorities," the local authorities have full power to impose conditions as conditions precedent to their assent, and that no amount of hardship, or impossibility, or illegality, will avoid the bar of a condition precedent unperformed.

The act (section 21, supra) imposes no restrictions on the city. If the city gives its unqualified assent, the Public Service Commission may regulate facilities, rates of fare, and conditions of service, and many other matters; but the Legislature vests in the municipality, in the first instance, power to refuse its assent, and that necessarily implies the power to impose conditions. True, the relator derives its right to cross the streets from the state; but it takes this right subject to the condition of obtaining the assent of the municipality. D., L. & W. R. Co. v. Buffalo, 65 Hun, 464, 20 N. Y. Supp. 448.

The case of G. & W. Ry. Co. v. Galveston, 91 Tex. 17, 39 S. W. 920, 36 L. R. A. 33, indicates that a limit may be fixed to the range of conditions which may be imposed; but this case is distinguishable from most of the other cases upon the subject, in that the conditions relate to a matter outside of the territorial jurisdiction of the municipality. The weight of authority is that the power over matters within the territorial jurisdiction of the municipality is plenary, and, if unreasonable conditions are imposed within such limits, all the company can do is to refuse to accept.

Motion denied, with costs.