# CASES

## DECIDED IN THE

# SUPREME COURT OF GEORGIA

### AT THE

## MARCH TERM, 1919.

---

## GEORGIA RAILWAY AND POWER COMPANY *v.* RAILROAD COMMISSION OF GEORGIA *et al.*

1. Under the proviso contained in the fifth section of the act approved August 23, 1907, embodied in the Civil Code, § 2662, the Railroad Commission of this State was without authority to exercise the powers conferred and extended by that act, so as to determine or fix fares upon lines of street railroads within the limits of any town or city between which and the street-railroad company operating such lines there was a valid, subsisting contract at the time of the passing of the act.

(a) There was such a contract between the City of College Park and the Georgia Railway & Power Company, and between that company and the City of Decatur as to one line running from Decatur to Atlanta.

(b) But as between the Cities of Atlanta and East Point and the Georgia Railway & Power Company there was no such contract.

(c) But there was a contract covering the subject of transfers, which provided that upon the payment of one full fare a transfer should be given; and the Railroad Commission was without jurisdiction to deal with the matter of transfers.

2. "A grant of power to a municipal corporation must be strictly construed; and such a corporation can exercise no powers except those which are expressly given, or are necessarily implied from express grants of other powers." Applying this principle to the facts contained in this record the City of Atlanta was without authority to pass an ordinance fixing the rates of fare upon the lines of the street-railroad company which it had constructed within the limits of the municipality, and any attempt by the municipality to pass such ordinances was nugatory.

3. In the absence of a valid subsisting contract and ordinance upon the subject of fares, it was the duty of the Railroad Commission, upon ap-

plication by the Georgia Railway & Power Company, a street-railroad company, to fix and determine the rates of fare upon the lines of the street-railroad in the city, in accordance with the law defining the powers and duties of the commission.

No. 1174. MARCH 15, 1919.

Petition for mandamus. Before Judge Bell. Fulton superior court. October 2, 1918.

*Rosser, Slaton, Phillips & Hopkins, Colquitt & Conyers, Brewster, Howell & Heyman, King & Spalding,* and *C. T. & L. C. Hopkins,* for plaintiff.

*James K. Hines, J. L. Mayson, S. D. Hewlett, R. R. Arnold, E. E. Pomeroy, C. B. Cotterill, A. C. Broom,* and *G. M. Watkins,* for defendants.

BECK, P. J. The plaintiff in error, hereafter called the railway company, filed a petition to the Railroad Commission of Georgia, for an increase in street-railway fares. In the application it was claimed that an increase of rates for street-car and suburban fares was absolutely essential in order for the applicant, in view of the unusual war conditions which had prevailed for more than a year, to effectively discharge the obligations of the company to the public. The facts upon which this claim of the necessity for a raise in the rates of street-car fares was based were fully and elaborately set forth in the petition to the commission. Upon hearing the application the commission held, that, by reason of certain contracts between the railway company and the Cities of Atlanta, Decatur, East Point, and College Park, it had no jurisdiction to grant increased fares; and reached the conclusion, that, having found the contracts referred to to be physically existent, their validity was not a question for the commission, but for the courts to decide; that when dealing with the rates of a street-railway under the terms of the act of 1907, embraced in the Civil Code, § 2662, they were brought face to face with a contract or an ordinance in existence at the time of the passage of that act, and still subsisting; and that the commission could go no further in dealing with the rates until the obstacle should be removed by legal procedure before a court of competent jurisdiction, or until the General Assembly should further act. The commission, having concluded that there were contracts in existence which were an obstacle to their further proceeding, stated as their opinion that the applicant was entitled

to an increase in street-car fares, and that a six-cent fare would be reasonable and just "so long as existing abnormal war conditions prevailed," and recommended to the municipal authorities of Atlanta, Decatur, and College Park the justice of granting the increase "by amendment to existing contracts or ordinances." The railroad company then brought to the superior court of Fulton county its petition against the commission, and prayed that the writ of mandamus issue, requiring the commission to take jurisdiction in the matter of fixing the rates, it being insisted that the commission had erred in declining to take jurisdiction in the matter, for the reason that there were no contracts, valid or otherwise, between the City of Atlanta and the petitioner fixing the street-railroad fares, and that there was in existence in 1907 no ordinance, valid or otherwise, passed by the City of Atlanta fixing street-railroad fares; and that if there existed at said time any such contracts or ordinances, the same were invalid because the City of Atlanta lacked the charter power to make such contracts or ordinances; and because, if the City of Atlanta had charter power to make such contracts and ordinances, they would be void because violative of art. 4, section 2, par. 1, of the constitution of the State of Georgia, conferring upon the General Assembly alone the power of regulating passenger tariffs, preventing unjust discrimination, and fixing reasonable and just rates. Applicant also insisted that the alleged contracts between applicant and the towns of Edgewood, East Point, Decatur, and College Park were invalid, because these towns were without charter power to make such contracts, and that if they had such power the contracts would be void because in violation of that section of the constitution referred to. The further contention was made that even if there were valid contracts between the petitioner and one or more of the municipalities referred to, the existence of such valid contracts would not prevent the commission from exercising its jurisdiction to fix street-railroad fares in cases other than those covered by such valid contracts; and that if there were with the cities, whose streets were occupied by petitioner, valid existing contracts, the act of the commission in fixing and approving just and reasonable rates would not be an impairment of such contracts under the constitution of this State.

1. We will first consider the question as to whether, if there

were contracts in existence on the 23d day of August, 1907, between the municipalities named, or any of them, by the terms of which the street-railroad fares were fixed as to that municipality, such a contract would prevent the fixing of the street-railroad fares by the commission. The act to revise and enlarge the powers and duties of the Railroad Commission of Georgia, etc., approved August 23d, 1907, contains the statutory provision now embraced in section 2662 of the Civil Code, and, so far as relates to the questions under consideration in this case, reads as follows: "The powers and duties hereinbefore conferred by law upon the railroad commission are hereby extended and enlarged, so that its authority and control shall extend to street-railroads and street-railroad corporations, companies, or persons owning, leasing, or operating street-railroads in this State: Provided, however, that nothing herein shall be construed to impair any valid subsisting contract now in existence between any municipality and any such company; and provided that this section shall not operate as a repeal of any existing municipal ordinance." Until the passage of the act of 1907 the commission was without authority to deal with the subject of fixing fares for street-railways. Until the enactment of that statute they did not exercise, as to street-railway companies, the power to make the rates of charges for transportation of passengers on the lines of street-railways operated by street-railway companies, like that of the applicant in this case. But the act of 1907, as indicated by its caption, extended and enlarged the powers and duties of the commission, and embraced in these enlarged and extended powers and duties there was, among other things, the authority to fix fares upon street-railroads, and to otherwise exercise control over street-railroad corporations or companies operating street-railways, but in section 5 (the section of the act of 1907 extending the powers of the commission so as to embrace authority to fix fares upon street-railroads) the legislature enacted as a part of that section the proviso "that nothing herein [in the statute extending the powers and duties of the commission] shall be construed to impair any valid subsisting contract now in existence between any municipality and any such company" (street-railroad company). In our opinion the effect of the proviso is to leave the commission where it was before the enactment of the statute, as to its power and

authority to determine and fix fares upon street-railroads in any municipality which had a valid subsisting contract covering that subject with the street-railroad company.

Counsel for the railway company contend in their arguments that it was not competent for the municipality to enter into a contract with the street-railroad company upon this subject; that the fixing of fares upon street-railroads and other railroads is a matter that falls within the police power of the State; and that under the provisions of the constitution of the State, especially that part of the constitution which declares that the exercise of the police power of the State shall never be abridged (Civil Code, § 6464), the municipality and the railway company could not make a binding contract upon this subject. We cannot agree with this contention in full. We readily assent to the proposition that the regulation of passenger tariffs, the fixing of fares upon street-railways, as well as upon steam-railways, is a matter falling within the police power, and that neither the legislature of the State nor the legislative body of any municipality can, by ordinances or contracts, abridge the exercise of the police power of the State; but we do not think that in all cases and in reference to every subject which might fall within the police power of the State it is incompetent for a municipality or other corporation to make a contract in reference to such subject-matter where the State has not seen fit to exercise the police power in reference thereto. Under the constitution of this State, art. 3, sec. 7, par. 20 (Civil Code, § 6448), the General Assembly cannot authorize the construction of any street passenger railway within the limits of an incorporated town or city without the consent of the corporate authorities. Under such provisions the city authorities may withhold their consent for the construction of a street-railroad upon any of the streets of the municipality. It would seem that if they can do this they might impose conditions upon which a railroad company might construct its tracks in the streets, and enter into a contract with the corporation as to the conditions upon which it should be permitted to construct a railway within the limits of a municipality. In the case of *Atlanta Ry. &c. Co.* v. *Atlanta Transit Co.*, 113 *Ga.* 481 (39 S. E. 12), it was said: "Our constitution, in par. 20 of sec. 7, art. 3, declares that the General Assembly shall not authorize the construction of any street

passenger railway within the limits of any incorporated town or city without the consent of the corporate authorities. But when a corporation to duly construct such a railway has been created, it is within the power of the corporate authorities of the city in whose streets it is proposed to be constructed, to refuse its admission altogether, as well as to confine it to certain streets and routes, and to impose, as a condition precedent to such construction, such reasonable terms as the corporate authorities, looking to the interests of the citizens, may deem best."

Where application is made to the municipal authorities by a street-railroad company for the consent of the authorities to the construction of a railway in its streets, it does not seem to be sound to say that the city authorities could only say yes or no to such a petition; or that the city is compelled to refuse admission altogether or to admit it without any conditions whatever. In the case of St. Louis etc. Co. v. City of Kirkwood, 159 Mo. 239 (60 S. W. 110, 53 L. R. A. 300), the Supreme Court of Missouri said: "It would be difficult to conceive of a more positive and unequivocal veto than that conferred upon the cities, towns, and villages of this State by section 20, article 12 of the constitution and Revised Statutes 1889, sec. 2543, to prevent the construction and operation of railroads upon their streets and highways without their consent. When such power is given to cities and towns, it is not limited to a mere 'yes' or 'no,' but they may impose such conditions upon their consent as they see fit. . . Judge Elliott, in his work on Railroads, volume 3, section 1081, says: 'When a municipal corporation has the power to grant or refuse a railroad company the right to use its streets as it sees fit, or when its consent is required before any company can so use them, it has, as we think, the authority to prescribe the terms and conditions upon which the company shall have the right to construct and operate a railroad in its streets.' " In the case of People v. North Tonawanda, 70 Misc. 91 (126 N. Y. Supp. 186), the Supreme Court of New York said: "A city may refuse to assent to the construction of a railroad in its streets, and may therefore impose any conditions it thinks proper as conditions precedent to the giving of its assent; and if the city attaches conditions which the company deems unreasonable, the only remedy of the latter is to refuse to accept the assent." See also People v. Bernard, 110

N. Y. 548 (18 N. E. 354); Quinby v. Public Service Commission, 223 N. Y. 224 (119 N. E. 433). In Kalamazoo v. Circuit Judge, 200 Mich. 146 (166 N. W. 998), it was said: "A constitutional provision, giving cities reasonable control of their streets authorizes them to impose reasonable rates upon a public utility as a condition to the occupancy of the streets, the reasonableness of the rate being reviewable by the courts." In the case of Detroit. v. Detroit Citizens Railway, 184 U. S. 368 (22 Sup. Ct. 410, 46 L. ed. 592), it was said: "The rate of fare is among the most material and important of the terms and conditions which might be imposed by the city in exchange for its consent to the laying of railroad-tracks and the running of cars thereon through its streets. It would be a subject of great consideration and conference between the parties, and when determined by mutual agreement, the rate would naturally be regarded fixed until another rate was adopted by a like agreement." See also City of Barre v. Barre &c. Traction Co., 88 Vt. 304 (92 Atl. 237), and State v. Public etc. Commission (Mo.), 204 S. W. 497.

We do not base our opinion that a street-railroad company and a municipality may, under certain circumstances, contract with reference to rates of fare entirely upon that part of the constitution which provides that the legislature shall not authorize a street-railroad company to construct its railways in the limits of a municipality without the consent of the municipal authorities. We think that where the State has not exercised its police power and is not seeking to exercise its police power over the subject of fares upon street-railroads, the municipality and the street-railway may enter into contracts upon this subject that will be valid; but the right of the municipality to refuse absolutely its consent to the construction of a street-railway within its limits, and the constitutional and statutory provisions in regard thereto, strengthen us in the view that it is competent for the municipality and the street-railroad company to enter into contracts upon this subject. Having reached this conclusion, in the further consideration of the issues involved in this case we must inquire whether there was a contract between the City of Atlanta, and other municipalities named, and the railway company, upon the subject of fares.

We take up first the question as to whether or not the City of Atlanta had a contract on August 23d, 1907, and prior thereto

with the railway company upon the subject of fares. Whether it had such a contract is to be gathered from the facts, which we state briefly as follows: The Atlanta Street Railroad was Atlanta's original and principal street railway. It included the lines upon several of the principal streets of the city. On January 1, 1869, the city granted consent to this street-railroad company to occupy the streets of said city, by an ordinance, one of the conditions of which was as follows: "4th. The charges for passage on said road shall not exceed 20 cents for any through line, and not exceeding 10 cents for half lines or short distances." On December 18, 1882, the City of Atlanta granted its consent to the Metropolitan Street Railway Company to occupy certain streets, upon condition that "franchises granted subject to the conditions and limitations of ordinances heretofore passed in reference to the Atlanta and Gate City Street Railroad Companies." On July 4, 1877, a like grant on the same terms was made to Atlanta & Edgewood Street Railway Company. On December 7, 1891, a grant was made to Atlanta Consolidated Street Railway Company to occupy certain streets, in the following language: "The rights and franchises consented to and granted to said several street-railroad companies (including Atlanta Street Railroad Company) . . are hereby reconsented and regranted to said Atlanta Consolidated Street Railroad Company on the terms specified in said grants, both as to privileges and obligations." Subsequently, August 23, 1899, the City of Atlanta granted a consent to the Atlanta Rapid Transit Company to occupy with its lines certain named streets. Among the terms of this consent was the following. "This grant is made on the further condition that the charge for fare for a single passenger from any point on the lines of said company to any other point on the lines of said company within the City limits of Atlanta as now or hereafter defined shall not exceed five cents, except on cars that may be run after midnight and before five o'clock a. m., for which fares for single passengers as aforesaid shall not exceed ten cents." Prior to February 8, 1902, the name of Atlanta Consolidated Street Railroad Company had been changed to that of Atlanta Railway & Power Company, and there were in existence at said time in Atlanta only two street-railway companies, the Atlanta Railway & Power Company and Atlanta Rapid Transit Company. These two railroad companies,

together with the Georgia Electric Light Company and the Atlanta Steam Company desired to consolidate, and the consent of the city was sought to permit and authorize such consolidation. This consent of the city was obtained and was embodied in what is known as the "consolidation ordinance" of February 8, 1902. In this ordinance it was provided: "The said Consolidated Company shall, for the purpose of giving one continuous ride inside the City of Atlanta from a point on one of its lines to a point on another of its lines, grant one transfer ticket on the payment of one full fare."

We have gone carefully through these ordinances conferring certain rights and franchises upon the street-railroad companies mentioned, have considered the terms of what might be called the consent contract in the consolidating ordinance, and we cannot find that there were the elements of a contract existing in view of the provisions of the consolidating ordinance. The Railroad Commission of the State, in passing upon the question when the application for increase in fares was before it, in rendering their decision set forth at some length the grounds upon which they based the conclusions reached, and in announcing the conclusion and decision used, as a part of their opinion, the following language:

"The physical existence of a contract in 1907 between the town of Decatur and the lessor of applicant, prescribing a five-cent maximum fare between Decatur and Atlanta, is admitted. A similar contract between College Park and applicant's lessor was in existence. The Georgia Railway & Electric Company obtained its Atlanta franchises under an ordinance of the City of Atlanta, approved February 8, 1902, known as the 'consolidating ordinance.' This ordinance contained the terms and provisions upon which the consolidation of the street-railways therein named could be made. It was accepted by the Georgia Railway & Electric Company. The proposition of the city and its acceptance by the company constituted a contract, which contract was in existence in 1907. The 'consolidating ordinance' does not in direct terms prescribe rates. It, however, contains this provision: 'The said Consolidated Company shall, for the purpose of giving one continuous ride inside the City of Atlanta from a point on one of its lines to a point on another of its lines, which, however, does not carry the passenger

on a parallel line or in the same general direction from which he came, grant one transfer ticket upon the payment of one full fare, provided such transfer is requested at the time of the payment of the fare.' At that time the universal fare throughout the City of Atlanta upon each and all of the lines embraced in the ordinance was five cents. A 'full fare' must have meant the then prevailing fare. To compel the grant of transfers and at the same time throw no restrictions upon an increase in the primary rate would have been to leave the way open to nullify the free transfer by increasing or doubling the original and customary charge without transfers. But whether this be the correct view as to what was a 'full fare' or not, it is immaterial to a proper conclusion as to the grant of the prayer of petitioner for authority to charge two cents for a transfer; to grant it would, to that extent, repeal the consolidating ordinance under which the petitioner is now operating."

It will be seen that the commission laid especial stress upon that clause which we have already quoted from the consolidating ordinance. Whether, as they say, the uniform prevailing fare at the time of the adoption of the ordinance was five cents or not, this consolidating ordinance, that is the clause which we have quoted, does not fix the fare at five cents. It deals directly and expressly with the question of transfers, declaring that upon the payment of one "full fare" the "Consolidated Company" shall "grant one transfer ticket." That means, it seems to us, clearly, that upon payment of one full fare, whatever that may be, whether four cents, five cents, six cents, or more or less, the transfer shall be granted. We find nothing in the contract tending to bind either the company or the municipality as to the amount of a full fare. No attempt was made to state what was a full fare, and it does not appear to us to have been the intention of the contract and parties to do this. The thing contracted about was transfers, and we cannot assume from the words of the ordinance that one "full fare" was a five-cent fare. Upon this point we agree with counsel for plaintiff in error that the matter of fares was so important that it would not have been left to inference, but would have been the subject of definite contract if the city intended at that time to fix the amount of fares.

As betwen the municipality of East Point and the railroad com-

pany, the contract was to the effect that "passengers from all other parts of the town of East Point shall be accorded each and every privilege which may be accorded citizens of Atlanta with regard to transportation." If that is a contract upon the subject of fares at all, the fares would seem to follow, as to amounts, the fares for passenger transportation fixed for Atlanta.

The contracts with the municipalities of College Park and Decatur stand upon a different footing. Those contracts were in existence on the 23d day of August, 1907, and are still subsisting contracts. As we decided in the first part of this opinion, these contracts are not invalid, but are valid and subsisting contracts and were valid and subsisting contracts on the 23d day of August, 1907, and the commission properly held that they were without jurisdiction to fix the fares between the two towns just referred to and the City of Atlanta over the lines of the railway company.

Nothing that we have said in regard to the matter of contracts between municipalities and street-railway companies upon the subject of fares is to be construed as in any way impairing the police power of the State. We are of the opinion that at any time that the State may act in regard to this matter and extend the powers of the Railroad Commission so as to cover the matter of fares upon street-railways in towns where there are existing contracts, then, regardless of such contracts, the commission, in the exercise of the branch of the power thus conferred, can act.

But we are of opinion that the effect of the proviso in the section of the act of August 23d, 1907, which we have quoted above is to leave the commission without authority to fix rates of fare upon street-railroads in towns and cities where there were existing contracts at the time of the passage of the law between such towns and cities and the street-railroad companies, and that therefore the commission did not have the authority to determine and fix rates of fare as between the town of College Park and the City of Atlanta and upon one line running from Decatur to the City of Atlanta, because these two lines last referred to are expressly covered by contracts which were valid subsisting contracts at the time of the passage of the law. Nevertheless there was no existing contract which prevented the commission from taking jurisdiction of the matter of rates of fare in the City of Atlanta and upon lines of the railway company running into the City of Atlanta, except from the two points just mentioned.

This leaves for consideration and determination any valid ordinance upon the subject of fares which would bring the city within the purview of the proviso that the act should not operate as a repeal of any existing municipal ordinance; and we are of opinion that so far as concerns the question of fares there was not in Atlanta any municipal ordinance which could prevent the jurisdiction of the commission over the question of rates of fare from attaching. Under the view we take of the case we do not think it is necessary to determine whether there was or was not among the ordinances of the city one purporting to regulate the matter of fares on the street-railroad; for whether there were such ordinances, or whether those ordinances on this subject had been repealed, cannot affect the decision on this branch of the case under the principles of law which we have held to be sound, for we are of opinion that the City of Atlanta was without authority to enact such an ordinance, and an ordinance passed without authority cannot have the effect of a law, but is void and without effect. Towns and cities have only such powers as are granted them by the State, either in their charters or in general laws, and in determining the question as to whether cities have the power to pass any ordinances in question we have to examine their charters and the general laws, for in that way are to be found the sources of their powers as municipalities; and in doing this it must be remembered that all grants of power to municipalities are to be strictly construed, and if not expressly granted or necessarily implied from express grant of other powers then no such grant of powers exists. "A grant of power to a municipal corporation must be construed strictly, and such a corporation can exercise no powers except such as are expressly given or are necessarily implied from express grants of other powers." *Lofton* v. *Collins,* 117 *Ga.* 438 (43 S. E. 710, 61 L. R. A. 150) ; *Walker* v. *McNelly,* 121 *Ga.* 114 (48 S. E. 718). In the case of *Lockwood* v. *Muhlberg,* 124 *Ga.* 662 (53 S. E. 92), it is said: "And the rule is general that the powers granted to municipal corporations are to be strictly construed; and if there is a reasonable doubt of the existence of a particular power, the doubt is to be resolved in the negative. 21 Am. & Eng. Enc. L. (2d ed.) 950, and cit. The intent of the legislature should be sought for in every instance, and carried out if possible; but the courts have generally favored the

common-law rule, that municipal, like all grants of power from the State, are to be construed in favor of the State, and against the grantee, whenever a reasonable doubt exists.' Tied. Mun. Corp. § 110. See also, Dill. Mun. Corp. `§ 88; McQuillin's Mun. Ord. § 48." *Mayor* v. *Wilson,* 49 *Ga.* 476; *Frank* v. *Atlanta,* 72 *Ga.* 428.

Applying these principles to the facts of the present case, we do not find that the City of Atlanta or any of the other municipalities whose right to fix fares upon street-railroads is involved in this case has the charter power to pass ordinances upon this subject. We do not think that the section of the charter of the City of Atlanta giving it control over the streets, or that authorizing the municipality to prescribe "reasonable charges to be collected by hacks, cabs, drays, or other licensed vehicles for the transportation of persons," etc., or that part of the charter authorizing the city to pass ordinances generally for municipal purposes, not in conflict with the charter or the constitution or laws of this State or of the United States, or similar provisions in the charter, grants to the city the power to fix the rates of fare upon lines of street-railroad. That power is not expressly given in any of these provisions of the charter, nor is it to be necessarily inferred from any of the powers actually granted. Many authorities, including text-books, decisions by the Supreme Court of the United States and decisions by the courts of other States, might be here quoted and cited to support the ruling which we have made; but we do not deem it necessary, as the doctrine here restated is generally recognized, and the conclusion which we have reached under the facts in this particular case necessarily follows from an application of that doctrine.

3. In those cities where there was no valid contract upon this subject, which we have pointed out, the Railroad Commission had power and authority, and it was their duty, to fix the fares upon the lines of railroad of the Georgia Railway & Power Company; for no ordinance passed by any of these municipalities upon the subject would be valid or binding, because where such ordinances were passed it was without charter authority to do so, and, as we have ruled in the preceding division of this opinion, any attempt to pass an ordinance on this subject was nugatory. Under the provisions of the act of 1907, except as to the two municipalities which we have indicated, the way is clear for the Railroad Com-

mission of the State to perform the duty and exercise the power of fixing the rates in the municipalities involved in this case, other than the two expressly named above.

No question as to the right to have the writ of mandamus issue in the event the Railroad Commission of the State had jurisdiction of the street-railroads touching the matter of fares was raised; indeed it is stated in the bill of exceptions that both sides agreed that "procedure by mandamus was the proper procedure in the cause, and the parties so stated in open court."

It follows, then, from what we have above held, that the court should have granted the writ requiring the commission to pass upon and determine the rates of fare upon the other lines of street-railroad not covered by the contracts between the Railway Company and the Cities of Decatur and College Park; and the judgment of the court below is reversed in so far as it refused to issue the writ of mandamus requiring the commission to take jurisdiction as indicated. The judgment is affirmed in so far as it refused the writ as to passenger fares covered by the contract between the towns of Decatur and College Park and the Railway Company.

*Judgment reversed in part and affirmed in part. All the Justices concur, except Fish, C. J., who dissents, and Hill, J., who dissents in part.*

FISH, C. J. I can not concur in the entire conclusion reached by the majority of the court. To my mind the State Railroad Commission, in view of the facts of the case, and the law applicable thereto, rightly held that it was without jurisdiction to grant the relief sought by the railway company, and the judge of the superior court correctly refused to grant the writ of mandamus against the commission. It follows, of course, that in my opinion the judgment under review should be affirmed in its entirety.

HILL, J. I cannot concur in the opinion of the majority of the court in its entirety. I concur in the judgment in so far as it reverses the judgment of the trial court, and dissent from that portion which affirms the judgment in part. The view I take of this case is that the constitution of the State confers the *exclusive* power to make passenger rates, etc., upon the legislature. Art. 4, sec. 2, par. 1, of the constitution (Civil Code, § 6463), declares: "The power and authority of regulating railroad freights and

passenger tariffs, preventing unjust descriminations, and requir-
ing reasonable and just rates of freight and passenger tariffs are
hereby conferred upon the General Assembly, whose duty it shall
be to pass laws, from time to time, to regulate freight and passenger
tariffs, to prohibit unjust discriminations on the various railroads
of this State, and to prohibit said roads from charging other than
just and reasonable rates, and enforce the same by adequate
penalties." In pursuance of that authority the legislature provided
for the creation of the Railroad Commission of the State, with
authority to regulate and fix freight and passenger rates, etc., over
the railroads of this State, street-railroads being excepted. Acts
1878-9, p. 125. In 1907 (Acts 1907, p. 72, Civil Code of 1910,
§ 2662) the legislature amended the act of 1879 and enlarged the
powers of the Railroad Commission so as to include street-rail-
roads within its jurisdiction. Nowhere else is express authority
conferred to make just and reasonable passenger fares or rates.
Under the constitution the *General Assembly* must fix the rates,
and even that body could not contract as to rates. And if this is
so, it could not authorize a municipality to so contract. *Ga. R.* v.
*Smith,* 70 *Ga.* 694. Art. 3, sec. 7, par. 20, of the constitution (Civil
Code of 1910, § 6448) provides, "The General Assembly shall not
authorize the construction of any street passenger railway within
the limits of any incorporated town or city, without the consent
of the corporate authorities." And section 2600 of the Civil
Code of 1910 declares: "All the provisions of the preceding divi-
sion shall govern in the incorporation, control, and management of
suburban and street-railroad companies, in so far as the same
are applicable and appropriate thereto. Any number of persons,
not less than ten, who desire to be incorporated for that purpose,
may form a company as provided in the preceding division, with
this additional requirement: That they must in their petition
specify what city, town or village, and in what streets thereof,
they propose to construct and build said railroad: Provided, that
no street-railroad incorporated under this division shall be con-
structed within the limits of any incorporated town or city with-
out the consent of the corporate authorities: And provided further,
that all such street-railroad companies incorporated under this
division shall be subject to all just and reasonable rules and
regulations by the corporate authorities, and liable for all assess-

ments and other lawful burdens that may be imposed upon them from time to time: And provided further, only such of the powers and franchises that are conferred by said divisions shall belong to said street-railroad companies as shall be necessary and appropriate," etc. It is insisted that the last-quoted provision of the constitution and code section confer the power upon municipalities to contract for rates. To this I cannot agree. Power cannot be granted which is inconsistent with the constitution or the general law of the State. Civil Code, §§ 6391-2. To grant power to a municipality to make contract rates in this State would be inconsistent with both the constitution and general law. The constitution *does* provide that railways shall not be *constructed* on streets without the consent of the *municipality*. Civil Code, § 6448. But the power to consent to the *construction* and *operation* ·of street-railroads over city streets does not include the power to make rates. City of Chicago *v.* O'Connell, 278 Ill. 591 (116 N. E. 210) ; Public Utilities Commission *v.* Chicago, 275 Ill. 555 (114 N. E. 325, Ann. Cas. 1917C, 50) ; Tampa Water Works *v.* Tampa, 199 U. S. 241 (26 Sup. Ct. 23, 50 L. ed. 170). Nor does the power to make rules and regulations as to the *construction* of street-railroads in the streets of a city confer the authority to make rates. The City of Atlanta has not, by authority of. the constitution, or of its charter, or of the general law of the State, authority to make rate ordinances or rate contracts relatively to the State itself. Rate-making is not inherent in municipalities, and no such authority has been conferred in Georgia on them, either by the constitution or general law of the State. See *Henderson* v. *Heyward*, 109 *Ga.* 377 (34 S. E. 590, 47 L. R. A. 366, 77 Am. St. R. 384). Even if the rate ordinances and contracts under review are "valid subsisting contracts," they must give way to the demands of the State whenever the State undertakes to exercise its police power in order to make, change, or revise rates through the Railroad Commission. And this would not have the effect of impairing the obligation of contracts. In *Union Dry Goods Co.* v. *Georgia Public Service Corp.*, 142 *Ga.* 841 (83 S. E. 946, L. R. A. 1916E, 358), it was held by this court: "The railroad-commission act of 1907 (Acts 1907, p. 72), giving to the commission jurisdiction over electrical lighting and power companies, and the order of the commission fixing maximum rates in the instant case, are not

void as in opposition to the clauses in the Federal and State constitutions prohibiting the passage of any ex post facto law, or law impairing the obligation of contracts, or the taking of property without due process of law, or for public use without just compensation." And see *City of Dawson* v. *Dawson Tel. Co.*, 137 *Ga.* 62 (72 S. E. 508) ; *Railroad Com.* v. *L. & N. R. Co.*, 140 *Ga.* 817, 828 (80 S. E. 327, L. R. A. 1915E, 902, Ann. Cas. 1915A, 1018) ; Union Dry Goods Co. v. Ga. Pub. Serv. Corp., 248 U. S. 372 (39 Sup. Ct. 117).